**Benjamin REYES, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 14–96–00983–CR.**

Court of Appeals of Texas,
Houston (14th Dist.).

July 2, 1998.

Kirk Oncken, Houston, for appellant.

Kelly Ann Smith, Houston, for appellee.

Before MURPHY, C.J., and HUDSON and O'NEILL, JJ.

## OPINION

MURPHY, Chief Justice.

Following a jury trial, appellant was found guilty of the offense of aggravated robbery. The issue of punishment was also tried to the jury, and after hearing evidence, punishment was assessed at twenty-two years in the Institutional Division of the Texas Department of Criminal Justice. Appellant challenges his conviction alleging the trial court erred in dismissing one of the jurors on its own motion after testimony in the case had begun. We affirm.

On July 30, 1996, a jury was sworn, appellant pled not guilty to aggravated robbery, and the State began to present evidence. After the State presented several witnesses, the jury was excused for the day. One of the jurors, Robert Medellin, approached the court at the recess and revealed that during the course of the trial, he realized he knew appellant from high school. On the record, the trial court questioned Mr. Medellin about the impact this realization had upon him and whether he could still be a fair juror. Mr. Medellin, who seemed to have a great deal of trouble expressing himself verbally, implied that he was concerned about the possibility of retaliation. Ultimately, he told the court, "Well, I couldn't make that decision to say guilty or not." He stated that he did not believe he could follow his oath as a juror. The trial court determined, sua sponte, that Mr. Medellin should be excused.

The trial court informed the attorneys for both sides that he intended to excuse Mr. Medellin. The court summarized Mr. Medellin's concerns and told the attorneys that Mr. Medellin was biased and prejudiced in favor of appellant, because of his fear of retaliation, and would not be able to render a verdict in favor of the State. Both the prosecutor and appellant's trial counsel were allowed to question Mr. Medellin. At the end of the questioning, the trial court excused the juror over appellant's objection. The trial then proceeded to its conclusion with the remaining eleven jurors.

In his sole point of error, appellant claims the trial court erred in excusing Mr. Medellin on its own motion after the case had begun. Appellant claims the trial court's action invalidated the punishment assessed, and he is therefore entitled to a reversal for a new punishment hearing.

■ After he was found guilty by the jury, appellant testified on his own behalf during

the punishment phase of the trial. While testifying, he repeatedly and clearly admitted his guilt. He admitted to having committed aggravated robbery, stated he was remorseful, and asked the jury for leniency. A defendant's admission of guilt during the trial's punishment phase waives any non-jurisdictional error that may have occurred during the trial's guilt/innocence phase. *McGlothlin v. State*, 896 S.W.2d 183, 186 (Tex.Crim.App. 1995); *DeGarmo v. State*, 691 S.W.2d 657, 661 (Tex.Crim.App.1985). This concept of law is known as the *DeGarmo* doctrine and has been described as a common sense rule of procedure. *McGlothlin*, 896 S.W.2d at 187.

■ Based on *DeGarmo*, the State argues appellant has waived any error concerning the trial court's decision to excuse Mr. Medellin. Appellant admits that he has waived any error that occurred during the guilt/innocence phase of the trial; however, he argues he is entitled to a new punishment hearing because under the *DeGarmo* doctrine, an admission of guilt during the punishment phase does not waive errors that occurred at the punishment phase of the trial. Appellant contends that because he elected to have the same jury determine his guilt and assess his punishment, he was entitled to have Mr. Medellin assess his punishment. Appellant apparently believes that excusing Mr. Medellin was an error that occurred twice, once during the guilt/innocence phase, and again during the punishment phase. We disagree.

The trial court dismissed one juror, Mr. Medellin, during the guilt/innocence phase of the trial. Error, if any, occurred when the court actually dismissed the juror, not later at the punishment phase of the trial. Thus, we hold that appellant waived any error based on the trial court's decision to dismiss Mr. Medellin from the jury when he admitted his guilt during the punishment phase of the trial. *See McGlothlin*, 896 S.W.2d at 186; *DeGarmo*, 691 S.W.2d at 661; *Mays v. State*, 904 S.W.2d 920, 925 (Tex.App.—Fort Worth 1995, no pet.) (holding that the defendant's admission of guilt during the punishment phase waived any potential sources of error which may have arisen out of actions taken by the trial court during the trial's guilt/innocence phase).

Accordingly, we overrule appellant's point of error and affirm the trial court's judgment.

HUDSON, Justice, dissenting.

A defendant charged with a felony offense has the constitutional right to be tried by a jury of twelve people. *See* Tex. Const. arts. I, § 10; V, § 13. While a defendant may choose to waive this right either partially or completely, he did not do so here. *See Hatch v. State*, 958 S.W.2d 813 (Tex.Crim.App. 1997); Tex.Code Crim. Proc. Ann. art. 1.13 (Vernon Supp.1998).

When a juror dies or becomes "disabled from sitting," the trial court has the discretion to continue with eleven jurors with or without the defendant's consent. *See* Tex. Code Crim. Proc. Ann. art. 36.29 (Vernon Supp.1998). The phrase "disabled from sitting" has been interpreted by the Court of Criminal Appeals as referring to a physical, mental, or emotional disability. *See Carrillo v. State*, 597 S.W.2d 769, 771 (Tex.Crim.App. 1980). The term "disabled," however, does not encompass bias or prejudice. *Bass v. State*, 622 S.W.2d 101, 105 (Tex.Crim.App. 1981).

Here, the State contends a juror became mentally or emotionally disabled due to his fear of retaliation. However, any juror who returns a guilty verdict faces at least the remote *possibility* of retaliation. For the fear of retaliation to become a debilitating influence, the juror must first conclude the defendant has both the will and the means to harass, intimidate, or otherwise punish him for his verdict. Such fear is based upon the perception that the defendant is endowed with a mean and spiteful character. Thus, the fear of retaliation flows from a bias or prejudice against the defendant. This fear may be well founded and clearly justified, and it may warrant a mistrial if the juror is incapable of further service. However, I do not believe fear of retaliation is the kind of "disability" envisioned by the legislature when it enacted Article 36.29. Accordingly, I would find the trial court erred when it, without appellant's consent, dismissed the ju-

ror and continued the trial with a "jury" of eleven people.

If, after pleading not guilty, an accused is subsequently found guilty by the trier-of-fact, and he then testifies at the punishment stage of his trial and admits his guilt, he has, in essence, entered the equivalent of a plea of guilty and cannot later challenge the finding of guilt. *See McGlothlin v. State,* 896 S.W.2d 183, 186 (Tex.Crim.App.1995). Here, appellant testified at the punishment phase of his trial and made a judicial confession of guilt. The majority concludes that appellant's confession waived all error committed during the guilt/innocence phase of the trial, and because the improper dismissal of the juror occurred *during* the guilt/innocence phase of the trial, such error was waived. I respectfully disagree.

The *DeGarmo*[1] waiver doctrine referred to in *McGlothlin* is causal, not temporal, in nature. When a defendant admits his guilt at the punishment phase of the trial, he does not waive all error committed *during* the guilt/innocence phase; he waives all error that could arguably have *caused* the rendition of an improper verdict. While an error affecting the guilty verdict must logically precede that verdict, it is not the *time* the error occurs that brings it within the *DeGarmo* doctrine. Rather, the doctrine applies to errors committed in *attaining* that verdict. Under the *DeGarmo* doctrine, such errors are waived not because they were committed *during* the guilt/innocence phase of the trial, but because the issue of defendant's guilt or innocence has been mooted by his judicial confession.

The prejudicial impact of an error committed during guilt/innocence may extend into the punishment phase of a trial. If, for example, inadmissible evidence is introduced over a defendant's objection during the guilt/innocence phase of the trial, and the evidence would unfairly prejudice the jury's assessment of punishment, the defendant's subsequent admission of guilt does not waive the "punishment error" merely because the error was committed *during* the guilt/innocence phase of the trial.

Here, the error occurred during the guilt/innocence phase of the trial, but its effect extends to *both* stages of appellant's bifurcated trial. While I agree that whatever detrimental effect the error may have had upon the jury's finding of guilt was waived when appellant judicially confessed, a defendant's right to a jury trial does not end with a finding of guilt. *See* TEX.CODE CRIM. PROC. ANN. art. 27.02 (Vernon 1989). A defendant may plead guilty and still insist upon having a jury of twelve people assess his punishment. Because appellant was denied this constitutional prerogative, I respectfully dissent.

---

1. *DeGarmo v. State,* 691 S.W.2d 657, 661 (Tex. Crim.App.1985).