**Xavier Rolando RESENDEZ,
Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 13–01–183–CR.**

Court of Appeals of Texas,
Corpus Christi–Edinburg.

March 3, 2005.

Arnoldo R. Pena, Brownsville, for appellant.

Armando R. Villalobos, Dist. Atty., Cynthia L. Garza, Court Reporter, Brownsville, for appellee.

## OPINION

Opinion by Justice GARZA.

On the Court's motion, *Resendez v. State*, No. 13–01–183–CR, 2004 WL 1795270 (Corpus Christi, August 12, 2004, no pet. h.) is withdrawn and this en banc opinion is issued. *See* TEX.R.APP. P. 49.7.

Appellant, Xavier Rolando Resendez, was convicted of bribery with enhancement after a jury trial and was sentenced to fifteen years' imprisonment and a fine of $5,000. Appellant appeals his conviction to this Court in three issues. We conclude appellant was not entrapped, the trial court did not make improper comments and remarks, and appellant's counsel provided effective representation. We affirm the judgment of the trial court.

## I. Background

In July of 2000, Michael Garza, a bail bondsman in Cameron County, Texas, contacted the district attorney's office and informed Rebecca Rubane, an assistant district attorney, that his client, Xavier Resendez, had asked Garza if there was any way to dispose of charges against him for cocaine possession "under the table" (i.e., by bribing someone at the district attorney's office). Garza agreed to record a telephone conversation between himself and appellant and to provide appellant the name and telephone number of an undercover agent posing as Rubane's boyfriend in order to facilitate a sting operation. Upon receiving the undercover agent's name and number from Garza, appellant immediately contacted the agent and discussed the price for getting his charge dismissed. Appellant then called Garza one more time, complaining about the high price being demanded. These calls were all recorded and transcribed.

Appellant and the undercover agent then had a series of telephone conversations and personal meetings where appellant provided cash payments for the bribe. Appellant also requested that the agent pass bribes to Rubane on behalf of his brother and his friend and negotiated the price for each additional bribe. A total of $7,800 in cash was delivered to the undercover agent by appellant for these bribes. All phone calls and personal meetings involving appellant were recorded by the agent. Appellant was then arrested and indicted for bribery.

Appellant pled not guilty at trial, claiming that he was entrapped by the actions of Garza, his bail bondsman and initial

contact. While on the stand during the punishment phase of the trial, appellant admitted to committing bribery. On appeal, appellant argues: (1) the evidence was legally insufficient to support his conviction for the offense of bribery, as evidence of entrapment provided a defense to prosecution; (2) the trial court erred by making improper comments and remarks regarding evidence presented at trial; and (3) appellant's trial counsel provided ineffective assistance of counsel. We address each issue in turn.

## II.  Legal Sufficiency

Appellant argues by his first issue that the evidence is legally insufficient to support his conviction for bribery. He claims that his defense of entrapment was successfully raised and thus constitutes a bar to prosecution. The State argues that appellant waived his right to challenge the sufficiency of the evidence when he admitted his guilt at the punishment phase of trial and that, in any event, the evidence is sufficient to support his conviction.

### A.  The *De Garmo* Doctrine

We first address the question of waiver: does the *De Garmo* doctrine bar appellant from challenging the legal sufficiency of the evidence? The State argues that because appellant admitted guilt during the punishment phase of trial, the *De Garmo* doctrine prevents him from challenging the legal sufficiency of the evidence. *See De Garmo v. State,* 691 S.W.2d 657, 660–61 (Tex.Crim.App.1985). After reviewing the parties' briefs and the case law, we conclude that appellant is not barred from challenging the legal sufficiency of the evidence on appeal.

The *De Garmo* doctrine is a doctrine of waiver: a defendant's admission of guilt at the punishment phase of trial waives all non-jurisdictional errors that may have occurred at the guilt phase of trial. *See Reyes v. State,* 971 S.W.2d 737, 737 (Tex. App.-Houston [14th Dist.] 1998) (citing *De Garmo,* 691 S.W.2d at 660–61), *rev'd,* 994 S.W.2d 151, 152 (Tex.Crim.App.1999). Despite the widespread attention given to the *De Garmo* doctrine, its potency is far weaker—at least against legal-sufficiency challenges—than its reputation has led some to believe.

We begin with *Leday v. State,* 983 S.W.2d 713, 720–26 (Tex.Crim.App.1998). In *Leday,* the court of criminal appeals abandoned the *De Garmo* doctrine as applied to certain constitutional, legal, and social guarantees—what the court described as "due process and those individual rights that are fundamental to our quality of life." *Id.* at 725. One of these "guarantees" is that the judgment in a criminal trial must be supported by proof beyond a reasonable doubt. *Id.* Thus, under a literal reading of *Leday,* a legal-sufficiency challenge is not waived by a defendant's admission of guilt at the punishment phase. *See id.* at 725–26.

Unfortunately, the holding in *Leday* is not as broad as it appears. *Leday* did not involve a challenge to the sufficiency of the evidence; the issue was whether the trial court erred by admitting evidence over the defendant's objection. *Id.* at 715. Thus, the holding in *Leday* is limited to the court's resolution of the issue presented: a defendant's admission of guilt does not waive a court's erroneous admission of evidence. *See id.* at 724–26.

In reaching this holding, the *Leday* court addressed and refuted the numerous justifications offered for the *De Garmo* doctrine, including, among other things, waiver, estoppel, harmless error, characterization of the doctrine as a "common-sense rule of procedure," and any "analogy to the guilty plea." *See id.* at 720–26. Although the court's analysis was strongly

worded, the *Leday* decision did not overrule the *De Garmo* doctrine completely. *Leday* involved only one issue: the admissibility of evidence. *See id.* at 724–26. To the extent *Leday* overruled the *De Garmo* doctrine, it did so only on that issue.

We are thus back where we started: does the *De Garmo* doctrine preclude appellant from challenging the legal sufficiency of the evidence? We find the answer in the holding of the *De Garmo* opinion itself. In *De Garmo*, the defendant admitted guilt at the punishment phase of trial. *De Garmo*, 691 S.W.2d at 660. He then challenged the legal sufficiency of the evidence on appeal. *Id.* at 660–61. After submission of the case, the court of criminal appeals "carefully reviewed the evidence" and found it "more than sufficient to sustain the verdict of the jury...." *Id.* at 661. According to the court, the evidence "would permit a rational trier of fact to find guilt beyond a reasonable doubt." *Id.*

At this point, the holding of the *De Garmo* case ends and "the *De Garmo* doctrine" begins. Despite its conclusion that the evidence was sufficient, the court stated that a defendant such as De Garmo, who admits guilt at the punishment stage of trial, "not only waives a challenge to the sufficiency of the evidence ... but ... also

waives any error that might have occurred during the guilt stage of the trial." *De Garmo*, 691 S.W.2d at 661. This "breathtaking" statement—now called the *De Garmo* doctrine—is not the actual holding of the *De Garmo* case: the *De Garmo* doctrine was not applied in the *De Garmo* case. *Leday*, 983 S.W.2d at 722–23 ("Having made, without citation of authority, this sweeping statement, *De Garmo* has a justifiable claim to its eponymous status in this area of the law."). As the *Leday* court later explained, "the *De Garmo* doctrine portion of the *De Garmo* opinion is dictum, since the Court proceeded to consider and overrule the sufficiency of the evidence point that De Garmo raised." *Id.* at 723 n. 14.

■ The State's brief cites no post-*De Garmo* precedent from the court of criminal appeals in which a legal sufficiency issue was held to be waived by a defendant's admission of guilt during the punishment phase of trial.[1] This Court has also failed to uncover any such precedent. We are thus faced with a choice between the "ill-written dictum" of *De Garmo* and *De Garmo's* actual holding. *See Reyes*, 994 S.W.2d at 153 (describing the *De Garmo* doctrine as "ill-written dictum"). For the reasons articulated in *Leday*, which are excerpted below,[2] we decline to follow

---

1. The State relies on *Lemons v. State*, 953 S.W.2d 825, 828 (Tex.App.-Corpus Christi 1997, no pet.) ("[O]ur review of the record reveals that appellant's only point of error has been waived by appellant's testimony during the punishment phase of his trial.") (citing *De Garmo v. State*, 691 S.W.2d 657, 657 (Tex. Crim.App.1985)).

2. In the words of the *Leday* court:
The stated reason for refusing to reverse a conviction of such an appellant for insufficient evidence was that on the retrial the State would certainly obtain conviction by using the appellant's testimony from the first trial. If that reason ever had validity, it disappeared after the Supreme Court's

holding that the Double Jeopardy Clause of the Fifth Amendment would be violated by a retrial after an appellate court held that the evidence of guilt was legally insufficient. Insofar as these early precedents which underly our "*De Garmo* doctrine" held that appellate complaints about insufficient evidence of guilt would be futile when the appellant admitted his guilt at the punishment phase, they cannot be relied on. *Leday v. State*, 983 S.W.2d 713, 721 (Tex. Crim.App.1998) (citations omitted).

The *Leday* opinion also illustrates the basic unfairness imposed upon defendants by the *De Garmo* doctrine: if the defendant admits guilt at the punishment phase, the *De Garmo*

the *De Garmo* doctrine. *See id.* at 720–26. We hold that a defendant's admission of guilt during the punishment phase of trial does not waive errors related to the legal sufficiency of the evidence.

■ In reaching this conclusion, we note, as did the court in *Leday*, that the *De Garmo* doctrine is consequential only when an admittedly guilty person has been convicted. *Id.* at 724. But "the ascertainment of truth is not the only objective of our law of criminal procedure." *Id.* "We as a people have deliberately chosen to adopt laws which interfere with the truth-seeking function of the criminal trial." *Id.* "Due process and those individual rights that are fundamental to our quality of life co-exist with, and at times override, the truth-finding function." *Id.* at 725 (quoting *Morrison v. State*, 845 S.W.2d 882, 884 (Tex.Crim.App.1992)). Among these is the fundamental right that the judgment in a criminal trial be supported by proof beyond a reasonable doubt. *Id.* This right is not waived by a defendant's admission of guilt after the jury has returned its verdict. *See Leday*, 983 S.W.2d at 726 ("Insofar as the *De Garmo* doctrine estops a defendant from raising on appeal a violation of any of these guaranties, it cannot be justified on the ground that the verdict of guilt was correct.").

Accordingly, we overrule this Court's prior decisions to the extent they have applied the *De Garmo* doctrine to legal-sufficiency challenges or suggested that

doctrine prevents an appeal. However, if the defendant continues to deny guilt, the potential consequences include punishment for perjury and a potentially longer sentence for failure to show remorse. If the defendant tries to avoid this problem by refusing to testify at all during the punishment phase, the opportunity is lost for the defendant to give the jury meaningful mitigating information that only the defendant can provide. *Id.* at 723–24.

the *De Garmo* doctrine remains a viable bar to legal-sufficiency challenges. *See, e.g., Nunez v. State*, 117 S.W.3d 309, 321 (Tex.App.-Corpus Christi 2003, no pet.).[3] In doing so, we believe it is important to explain exactly where these decisions went awry. Take *Nunez*, for instance. *See id. Nunez* relied on two cases in addition to *De Garmo: Leday*, 983 S.W.2d at 725–26 and *Reyes*, 994 S.W.2d at 153. *Nunez*, 117 S.W.3d at 321. Neither of these cases applied the *De Garmo* doctrine to legal-sufficiency challenges.

*Nunez* cited *Leday* for the proposition that the *De Garmo* doctrine still applies to legal-sufficiency challenges. *Id.* But as we have already explained, *Leday* did no such thing: *Leday* involved the admissibility of evidence, not a legal-sufficiency challenge. *See Leday*, 983 S.W.2d at 715. *Nunez's* reliance on *Leday* is even more inexplicable given that *Leday* lambasted the *De Garmo* doctrine. *See id.* at 725 ("[T]he *De Garmo* doctrine ... cannot be justified on the ground that the verdict of guilt was correct."). *Leday* did not continue to apply *De Garmo:* it abrogated it. *See id.* at 725–26 ("We hold that the *De Garmo* doctrine cannot be invoked to prevent ... appellate review.").

*Nunez* also cited *Reyes*, 994 S.W.2d at 153. According to *Nunez's* interpretation of *Reyes*, a "defendant's admission of guilt at [the] punishment phase waives sufficiency challenge[s]." *Nunez*, 117 S.W.3d at

3. *See also Lemons v. State*, 953 S.W.2d 825, 828 (Tex.App.-Corpus Christi 1997, no pet.); *Lopez v. State*, 852 S.W.2d 695, 697–98 (Tex. App.-Corpus Christi 1993, no pet.); *Landry v. State*, No. 13–03–489–CR, 2004 WL 2335980 at *1–2 (Tex.App.-Corpus Christi June 24, 2004, no pet. h.) (not designated for publication); *Grier v. State*, No. 13–03–590–CR, 2004 Tex.App. LEXIS 2914, at *9 (Tex.App.-Corpus Christi April 1, 2004, no pet.) (not designated for publication).

321. Just like *Leday,* however, *Reyes* did not involve a challenge to the sufficiency of the evidence. The issue in *Reyes* was whether the trial court erred in dismissing a juror. *Reyes,* 994 S.W.2d at 152. *Reyes* therefore provides no authority on legal-sufficiency issues or on whether the *De Garmo* doctrine applies to such challenges.

In short, *Nunez* cited three cases, only one of which—*De Garmo*—actually dealt with the issue of legal sufficiency. As explained above, the holding of the *De Garmo* case and the *De Garmo* doctrine are two different things. *Nunez* followed the *De Garmo* doctrine, not *De Garmo's* holding. Today, we follow *De Garmo's* holding and, like our sister courts, abandon the *De Garmo* doctrine on legal-sufficiency issues.[4] To the extent our prior decisions have held to the contrary, we overrule them.

■ In overruling this Court's precedent, we are mindful of the doctrine of stare decisis. Stare decisis dictates that we adhere to precedent and not disturb a settled principle of law except upon the most urgent of reasons. *McGlothlin v. State,* 896 S.W.2d 183, 188–89 (Tex.Crim. App.1995). We are compelled by the analysis of the *Leday* court and interpret the preservation of "due process and those individual rights that are fundamental to our quality of life" as an urgent reason for today's holding. *See Leday,* 983 S.W.2d at 725–26.

In passing, we note that appellant has not challenged the factual sufficiency of the evidence. Accordingly, this opinion does not decide what effect *De Garmo, Leday, Reyes,* and their progeny have on factual sufficiency claims when a defendant admits guilt during the punishment phase of trial. Such a decision would be warranted only if the issue of factual sufficiency were presented to this Court.

## B. Entrapment

■ As we find no waiver, we now address appellant's claim that the evidence against him was legally insufficient to overcome his defense of entrapment. A review of the jury's rejection of an entrap-

---

4. *See Cochran v. State,* 107 S.W.3d 96, 100 (Tex.App.-Texarkana 2003, no pet.) ("the [*Leday*] case has . . . cast doubt on the continued viability of the *De Garmo* rule as it relates to sufficiency of the evidence challenges"); *Duffy v. State,* 33 S.W.3d 17, 22 (Tex.App.-El Paso 2000, no pet.) (stating that "the Court of Criminal Appeals has essentially abrogated the *De Garmo* doctrine in recent years"). *See also Thomas v. State,* No. 07–99–0035–CR, 2003 WL 124824, at \*3 (Tex.App.-Amarillo Jan.15, 2003, no pet.) (not designated for publication) (stating that "admissions of guilt at punishment should not be viewed as waivers of several types of trial errors, including challenges to the admission of evidence and the legal sufficiency of the evidence"); *Grant v. State,* No. 14–01–475–CR, 2002 WL 835016, at \*2 (Tex.App.-Houston [14th Dist.] May 2, 2002, pet. ref'd) (not designated for publication) ("Because the Texas Court of Criminal Appeals has abrogated the *DeGarmo* doctrine, we will consider the merits of appellant's [sufficiency of the evidence] complaints.");

*Washington v. State,* No. 01–01–417–CR, 2001 WL 1589112, at \*2 (Tex.App.-Houston [1st Dist.] Dec. 13, 2001, no pet.) (not designated for publication) ("[Because] *Leday v. State* abrogated the *DeGarmo* case[,] . . . we look to the merits and determine whether the facts in this case were sufficient to sustain appellant's conviction."); *Cloud v. State,* No. 03–99–165–CR, 2000 WL 719405, at \*4 n. 3 (Tex.App.-Austin May 25, 2000, pet. ref'd) (not designated for publication) ("The *Leday* court excluded from that sweeping waiver [ (i.e., the *De Garmo* doctrine) ] certain values fundamental to the justice system . . . . [, including] that convictions be supported by sufficient evidence."); *Richardson v. State,* No. 05–98–1728–CR, No. 05–98–1729–CR, 1999 WL 796757, at \*1 n. 1 (Tex.App.-Dallas Oct. 7, 1999, no pet.) (not designated for publication) ("The Texas Court of Criminal Appeals abrogated the *De Garmo* doctrine; therefore, we will consider the merits of appellant's [sufficiency of the evidence] complaints.").

ment defense focuses on the legal sufficiency of the evidence. *Flores v. State*, 84 S.W.3d 675, 681 (Tex.App.-Houston [1st Dist.] 2002, pet. ref'd); *Torres v. State*, 980 S.W.2d 873, 875 (Tex.App.-San Antonio 1998, no pet.). We review legal sufficiency challenges by considering all the evidence that supports the conviction and reviewing it in the light most favorable to the verdict. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *see Sanders v. State*, 119 S.W.3d 818, 821 (Tex. Crim.App.2003). Our review of the sufficiency of the evidence will turn on whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found against the defendant on a defense issue beyond a reasonable doubt. *Saxton v. State*, 804 S.W.2d 910, 910 (Tex.Crim.App.1991).

■■ Entrapment is a defense to prosecution when "the actor engaged in the conduct charged because he was induced to do so by a law enforcement agent using persuasion or other means likely to cause persons to commit the offense. Conduct merely affording a person an opportunity to commit an offense does not constitute entrapment." TEX. PEN.CODE ANN. § 8.06(a) (Vernon 2003); *see Williams v. State*, 848 S.W.2d 777, 781 (Tex.App.-Houston [14th Dist.] 1993, no pet.) (providing a party with the phone number of a contact, cash and marijuana merely affords the opportunity to commit a crime and does not constitute entrapment). To satisfy the requirements of the entrapment defense, a party must produce evidence demonstrating that (1) she was actually induced to commit the offense, and (2) the inducement would have caused an ordinarily law-abiding person of average resistance nevertheless to commit the offense. *See England v. State*, 887 S.W.2d 902, 908 (Tex.Crim.App.1994). Because entrapment is a defense to prosecution rather than an affirmative defense, the defendant has the initial burden to produce evidence raising the defense; the burden then shifts to the State to disprove the defense beyond a reasonable doubt. TEX. PEN.CODE ANN. § 2.03 (Vernon 2003); *Russell v. State*, 904 S.W.2d 191, 197 (Tex.App.-Amarillo 1995, pet. ref'd).

■ Appellant argues that the testimony at trial proved that Garza, who was acting as an agent of law enforcement, entrapped appellant and caused him to commit the crime of bribery.[5] In support of this claim, appellant points to testimony from Garza regarding the first recorded call. Garza admitted that appellant did not initially understand what he was talking about when the subject of bribery was brought up. The transcript of this phone conversation, which was admitted into evidence and read to the jury, is as follows:

Garza: Remember what we talked about the other day?

Appellant: About what?

Garza: About what you were asking me—if something could be done.

Appellant: Ah-huh.

Garza: I've got a number and a name for you. ⋯

Appellant: Oh … what do you mean?

Garza: A guy for you to contact.

Appellant: I don't understand. What?

⋯

Garza: If something could be done under the table …

Appellant: Ah-huh.

---

**5.** The State is not contesting that Garza was acting as an agent of law enforcement when he recorded his conversations with appellant. Therefore, the only question remaining is whether Garza "induced" appellant to commit the offense. *See Flores v. State*, 84 S.W.3d 675, 682 (Tex.App.-Houston [1st Dist.] 2002, pet. ref'd).

Appellant also points to testimony from his brother and himself that indicated it was Garza, not appellant, who initially broached the idea of bribing the district attorney.

However, the trial record also includes testimony from Garza, asserting that appellant first brought up the idea of bribing someone in relation to his cocaine charges. The above conversation between Garza and appellant, in which Garza re-introduces the previously-discussed topic of bribery, shows that, once appellant understood what Garza was talking about, he vigorously assented ("Drop [the charges]! Right on!") and began asking for detailed instructions on how to initiate the conversation with Garza's contact. Transcripts admitted as evidence show that the only other conversation appellant had with Garza occurred immediately after appellant first contacted the undercover agent and consisted of a brief exchange during which appellant primarily complained about the high price he was being charged for the bribe. There is no evidence in the record of any further interaction between appellant and Garza. The record also includes testimony from the undercover agent who posed as the assistant district attorney's boyfriend and arranged to collect the bribes. His testimony, which was corroborated by transcripts, revealed that appellant, after getting the contact information from Garza, called the agent repeatedly to arrange the bribe, came to pre-arranged meetings, gave the agent a total of $7,800 in cash, and on his own initiative, began arranging for additional bribes on behalf of two other individuals.

It is clear from the verdict that the jury did not choose to accept appellant's entrapment defense. See Adelman, 828 S.W.2d at 421 ("the trier of fact—not the appellate court—is free to accept or reject all or any portion of any witness testimony."). It is

similarly clear from the evidence that a rational trier of fact could conclude beyond a reasonable doubt, viewing the evidence in the light most favorable to the verdict, that Garza's conduct would not likely cause an otherwise unwilling person to bribe an official or that it actually induced appellant to do so. See Flores v. State, 84 S.W.3d 675, 684 (Tex.App.-Houston [1st Dist.] 2002, pet. ref'd); Williams, 848 S.W.2d at 781. Accordingly, we overrule appellant's first issue.

### III. Improper Comments

■ By his second issue, appellant argues that the trial court erred by making improper comments and remarks in violation of article 38.05 of the code of criminal procedure. See TEX.CODE CRIM. PRO. ANN. art. 38.05 (Vernon 1979). Appellant complains in his brief about three separate instances in which the trial court made comments from the bench. In the first instance, appellant's counsel objected to a line of questioning by the State; the court noted that appellant's counsel had been engaged in similarly inappropriate questioning tactics earlier. On the second occasion, appellant's counsel objected to a question on grounds that essentially informed his witness how to answer, for which the court admonished counsel to "quit testifying." In the third instance, the court noted that appellant was being unresponsive in his answers to the prosecutor. Appellant claims that these comments violate article 38.05, which reads in part, "the judge shall not ... make any remark calculated to convey to the jury his opinion of the case." Id.

■ It is clear from the record that these comments do not violate this section of the code of criminal procedure, as they do not convey the judge's opinion about the case. Further, the trial record demonstrates appellant's counsel failed to object

to any of the these comments. In order to preserve an error for appellate review, a party must make an objection to the court and the court must explicitly or implicitly make an adverse ruling or refuse to rule on that objection. Tex.R.App. P. 33.1; *see Flores v. State*, 871 S.W.2d 714, 723 (Tex. Crim.App.1993). Thus, appellant has waived this complaint by not stating his objection with specificity and preserving it for appeal. *Mestiza v. State*, 923 S.W.2d 720, 724 (Tex.App.-Corpus Christi 1996, no pet.) ("[a] timely proper objection is necessary to preserve error concerning a trial judge's comment").

## IV.  Ineffective Assistance of Counsel

By his third issue, appellant contends he was not afforded effective assistance of counsel. He points to the same three comments from the bench he complained of in his second issue and argues that his attorney demonstrated his ineffectiveness by failing to object to the trial court's improper comments and remarks. Because this argument is based on constitutional considerations, appellant's admission of guilt does not affect his right to bring an appeal on this ground. *See Leday*, 983 S.W.2d at 725–26; *Reyes*, 994 S.W.2d at 153.

This Court has adopted the two-pronged *Strickland* test to determine whether representation was so inadequate that it violated a defendant's Sixth Amendment right to counsel. *See Strickland v. Washington*, 466 U.S. 668, 684, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) (recognizing the Sixth Amendment right to counsel); *Hernandez v. State*, 726 S.W.2d 53, 57 (Tex.Crim.App.1986); *Alfano v. State*, 780 S.W.2d 494, 495 (Tex.App.-Corpus Christi 1989, no pet.). To establish ineffective assistance of counsel, appellant must show: (1) his attorney's representation fell below an objective standard of reasonableness;

and (2) there is a reasonable probability that, but for his attorney's errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 687, 104 S.Ct. 2052; *Hernandez*, 726 S.W.2d at 57. Whether this test has been met is to be judged on appeal by the totality of the representation, not by isolated acts or omissions. *Rodriguez v. State*, 899 S.W.2d 658, 665 (Tex.Crim.App.1995).

The burden is on appellant to prove ineffective assistance of counsel by a preponderance of the evidence. *Munoz v. State*, 24 S.W.3d 427, 434 (Tex.App.-Corpus Christi 2000, no pet.). Appellant must overcome the strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. *Id.* Also, the acts or omissions that form the basis of appellant's claim of ineffective assistance must be evidenced by the record. *See Thompson v. State*, 9 S.W.3d 808, 814 (Tex.Crim.App.1999).

As we have already concluded, the remarks from the bench did not constitute improper comments, and thus, counsel's failure to object to them does not constitute error. Also, the record affirmatively demonstrates that throughout the trial, counsel more than adequately represented and protected the interests of his client. He filed a motion in limine before the trial to exclude a prior arrest, filed a motion to dismiss based on the defense of entrapment, and filed a motion to dismiss based on a violation of the attorney-client privilege by the State. He presented witnesses and cross-examined the State's witnesses vigorously, raising an issue as to whether the audio tapes implicating his clients could have been altered, and introduced evidence that allegedly demonstrated that Garza had a financial motive for entrapping appellant. Counsel asserted objections throughout the trial and received favorable rulings on some of them, including the first instance appellant complains of

above. He also submitted jury instructions to the court which included an instruction on the defense of entrapment, as well as further instructions ensuring that the jury knew it was to disregard any comments from the judge expressing an opinion about the guilt or innocence of the defendant.

Because the comments from the bench were not improper, appellant cannot demonstrate that the result of the trial would have been different had his desired objections been made. *See Strickland,* 466 U.S. at 687, 104 S.Ct. 2052. Accordingly we overrule appellant's remaining issue on appeal, and AFFIRM the judgment of the trial court.

Concurring and Dissenting Opinion by Justice CASTILLO.

CASTILLO, Justice, concurring and dissenting.

Respectfully, I concur with the decision to affirm. However, I respectfully dissent to the overruling of our precedent for the reasons stated in *Manning v. State,* 112 S.W.3d 740, 747 n. 4 (Tex.App.-Houston [14th Dist.] 2003, pet. denied).