COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-06-374-CR

CHRISTOPHER BRITTON NEWSOME APPELLANT

V.

THE STATE OF TEXAS STATE

------------

FROM THE 355TH DISTRICT COURT OF HOOD COUNTY

------------

OPINION

------------

A jury found Appellant Christopher Britton Newsome guilty of aggravated assault with a deadly weapon and assessed his punishment at sixty years’ confinement.  The trial court sentenced him accordingly.  Appellant brings three points on appeal.  In his first point, Appellant contends that the trial court abused its discretion by failing to find good cause for Appellant’s untimely filing of his notice of intent to raise the insanity defense and by prohibiting Appellant from raising the insanity defense.  In his second and third points, Appellant challenges the legal and factual sufficiency of the evidence.  Because we hold that the trial court did not err and that the evidence is legally and factually sufficient, we affirm the trial court’s judgment.

Regarding Appellant’s notice of intent to raise the insanity defense, Article 46C.052 of the Texas Code of Criminal Procedure provides that “[u]nless notice is timely filed under Article 46C.051, evidence on the insanity defense is not admissible unless the court finds that good cause exists for failure to give notice.”
(footnote: 1)  Article 46C.051 provides that the notice must “be filed at least 20 days before the date the case is set for trial, except [that] [i]f before the 20-day period the court sets a pretrial hearing, the defendant shall give notice at the hearing.”
(footnote: 2)
 This case was originally set for trial in August 2006 but apparently was reset for October 10, 2006, when voir dire began.  Appellant filed a notice of intent to raise the insanity defense on October 11 after the jury had already been sworn on October 10.  The notice stated that “[g]ood cause exists . . . [because] this notice is filed at the very same time Defendant’s counsel became aware of the issue of [Appellant’s] competency to stand trial.”  Affidavits of family members and trial counsel were attached in support of the notice, but none addressed good cause.  Trial counsel’s affidavit provided,

On October 10, 2006, defendant’s counsel was interviewing witnesses in preparation for trial on October 12, 2006.  During this interview, one family member related that the Defendant has for some years heard voices and seen people who are not apparent to others.  . . . Upon further investigation, everyone who knows the Defendant confirms that he suffers these delusions almost daily . . . .  While I have not observed any of these episodes[,] I have noticed erratic behavior evidenced by inexplicable outbursts which causes me to be concerned that Defendant may not have sufficient present ability to consult with me with a reasonable degree of rational understanding[,] or that he may not have a . . . rational, as well as, a factual understanding of the proceedings against him . . . .

On October 12, the trial court stated on the record that a discussion had occurred in chambers on October 11 regarding the notice.  That in-chambers discussion does not appear in the record.  On the record, Appellant argued to the trial court, “the good cause is that even after having interviewed these people many times and having interviewed this man many times, I had never been told or [no]body had ever revealed to me the issues contained in the affidavit . . . until . . . Tuesday afternoon [October 10, 2006] at about 4:30 p.m.”  The trial court noted that Appellant’s trial counsel had been appointed on February 22, 2006 and found that the notice was untimely and that “there ha[d] not been good cause shown that would justify the failure to timely file a notice of intent to raise [the] insanity defense.”  Appellant made an offer of proof while the jury was deliberating guilt, calling Appellant’s parents to testify in support of the insanity defense.  That testimony, though, like the affidavits, does not address good cause for the delay in filing the notice.  We hold that the trial court did not abuse its discretion by finding that Appellant had not shown  good cause for the untimely notice or by prohibiting Appellant from raising the insanity defense.  We overrule Appellant’s first point.

In his second and third points, Appellant contends that the evidence is legally and factually insufficient to support his conviction.  In its primary response, the State relies on the 
DeGarmo
(footnote: 3) 
doctrine to argue that Appellant waived error by admitting in punishment phase testimony that he had hit his wife, the complainant, with his shotgun.  The Texas Court of Criminal Appeals eviscerated this doctrine in 
Leday v. State
,
(footnote: 4) but sufficiency of the evidence was not at issue in 
Leday
.
(footnote: 5)  As the Corpus Christi court has explained,

In 
Leday
, the court of criminal appeals abandoned the 
DeGarmo
 doctrine as applied to certain constitutional, legal, and social guarantees—what the court described as “due process and those individual rights that are fundamental to our quality of life.”  One of these “guarantees” is that the judgment in a criminal trial must be supported by proof beyond a reasonable doubt.  Thus, under a literal reading of 
Leday
, a legal-sufficiency challenge is not waived by a defendant’s admission of guilt at the punishment phase.

Unfortunately, the holding in 
Leday
 is not as broad as it appears.  
Leday
 did not involve a challenge to the sufficiency of the evidence; the issue was whether the trial court erred by admitting evidence over the defendant’s objection.  Thus, the holding in 
Leday
 is limited to the court’s resolution of the issue presented:  a defendant’s admission of guilt does not waive a court’s erroneous admission of evidence.

In reaching this holding, the 
Leday
 court addressed and refuted the numerous justifications offered for the 
DeGarmo
 doctrine, including, among other things, waiver, estoppel, harmless error, characterization of the doctrine as a “common-sense rule of procedure,” and any “analogy to the guilty plea.”  Although the court’s analysis was strongly worded, the 
Leday
 decision did not overrule the 
DeGarmo 
doctrine completely.  
Leday
 involved only one issue:  the admissibility of evidence.  To the extent 
Leday 
overruled the 
DeGarmo 
doctrine, it did so only on that issue.

We are thus back where we started:  does the 
DeGarmo
 doctrine preclude appellant from challenging the legal sufficiency of the evidence?  We find the answer in the holding of the 
DeGarmo
 opinion itself.  In 
DeGarmo
, the defendant admitted guilt at the punishment phase of trial.  He then challenged the legal sufficiency of the evidence on appeal.  After submission of the case, the court of criminal appeals “carefully reviewed the evidence” and found it “more than sufficient to sustain the verdict of the jury . . . .”  According to the court, the evidence “would permit a rational trier of fact to find guilt beyond a reasonable doubt.”

At this point, the holding of the 
DeGarmo
 case ends and “the 
DeGarmo
 doctrine” begins.  Despite its conclusion that the evidence was sufficient, the court stated that a defendant such as 
DeGarmo
, who admits guilt at the punishment stage of trial, “not only waives a challenge to the sufficiency of the evidence . . . but . . . also waives any error that might have occurred during the guilt stage of the trial.”  This “breathtaking” statement—now called the 
DeGarmo
 doctrine—is not the actual holding of the 
DeGarmo 
case: the 
DeGarmo 
doctrine was not applied in the 
DeGarmo 
case.  As the 
Leday
 court later explained, “the 
DeGarmo
 doctrine portion of the 
DeGarmo 
opinion is dictum, since the Court proceeded to consider and overrule the sufficiency of the evidence point that DeGarmo raised.”

 . . . .  For the reasons articulated in 
Leday
, . . . we decline to follow the 
DeGarmo
 doctrine.  We hold that a defendant's admission of guilt during the punishment phase of trial does not waive errors related to the legal sufficiency of the evidence.
(footnote: 6)

We adopt the above analysis and join our sister court in Corpus Christi in holding that the 
DeGarmo 
doctrine does not bar claims of legal insufficiency of the evidence.
(footnote: 7)  Based on the same reasoning, we also hold that the doctrine does not bar factual sufficiency challenges.
(footnote: 8)  We therefore address the merits of Appellant’s sufficiency points.

The live paragraph of the indictment provides that Appellant

did then and there intentionally or knowingly cause bodily injury to [the complainant] by striking [her] with a firearm, and the defendant did use or exhibit a deadly weapon during the commission of the assault, to wit:  a firearm, that in the manner of its use or intended use was capable of causing death or serious bodily injury.

Appellant contends that the State failed to prove that the shotgun he hit the complainant with was a deadly weapon because of its manner of use or intended use.  Specifically, Appellant contends that there is no evidence that he loaded the shotgun, pointed it at anyone, or used it in a manner capable of causing serious bodily injury or death and no evidence that he used the shotgun as a club or that he intended to shoot or beat the complainant with it.  Appellant contends that he just used the gun “to shove or push” the complainant; that is, “to move [her] from one position to another across the porch.”

The complainant testified that Appellant picked up the shotgun
(footnote: 9) behind the bedroom door and told her that he was going to kill her.  He forced her and their three daughters to go for a ride.  Their eldest daughter testified that when Appellant appeared at the girls’ bedroom door before they all left the house, he had “[her] mama and a shotgun.”  The complainant thought that none of them would be returning to the house, that he would kill her and hurt them all.  The complainant testified that Appellant pushed her outside after punching her with his fist and then hit her in the left shoulder with the butt of the shotgun.  The impact was strong enough to push her across the porch.  The couple’s eldest daughter testified that she saw Appellant hit her mother in the shoulder with the shotgun, that it sounded like he had hit wood, and that her mother’s crying intensified.  Charles Samuel Hall and Michael Holly, two law enforcement officers who arrived at the scene of arrest, Appellant’s brother’s driveway, both testified that the shotgun could cause serious bodily injury if a person were to swing or jab it at somebody.  Hall also testified that Appellant told him that he had a twenty-gauge shotgun in the car, that he then found the very frightened complainant in the front passenger seat and the shotgun in the front passenger floorboard, and that the shotgun was made of wood and steel, weighed approximately six to eight pounds, and was not loaded.

The doctor who treated the complainant for her injuries testified that the shotgun was capable of causing death or serious bodily injury by hitting and that the bruises on the complainant’s back were consistent with her being hit by the butt end of a shotgun.

Appellant’s arguments that there is no evidence that the shotgun was loaded or pointed at anyone or that he intended to shoot the complainant are irrelevant to whether the shotgun is a deadly weapon as charged in this case.  Further, the evidence belies his assertion that there is no or insufficient evidence that he used the shotgun as a club or that he intended to beat the complainant with it.  Consequently, based on the appropriate standards of review,
(footnote: 10) we hold that the evidence is legally and factually sufficient to support Appellant’s conviction.  We overrule his second and third points.

Having overruled all of Appellant’s points, we affirm the trial court’s judgment.

LEE ANN DAUPHINOT

JUSTICE

PANEL F: CAYCE, C.J.; DAUPHINOT and MCCOY, JJ.

PUBLISH

DELIVERED:  August 31, 2007

FOOTNOTES
1:
Tex. Code Crim. Proc. Ann.
 art. 46C.052 (Vernon 2006).

2:
Id.
 art. 46C.051(b)(2), (c).

3:
DeGarmo v. State
, 691 S.W.2d 657, 661 (Tex. Crim. App. 1985),
 cert. denied
, 474 U.S. 973 (1985).

4:
983 S.W.2d 713, 720-26 (Tex. Crim. App. 1998).

5:
Id.
 at 715.

6:
Resendez v. State
, 160 S.W.3d 181, 184-86 (Tex. App.—Corpus Christi 2005, no pet.) (citations omitted).

7:
See Lehrman v. State
, No. 02-00-00119-CR, slip op. at 7 (Tex. App.—Fort Worth July 6, 2001) (not designated for publication) (addressing legal sufficiency complaint even though Lehrman admitted point during punishment phase), 
aff’d
, No. PD-1756-01 (Tex. Crim. App. Oct. 23, 2002) (not designated for publication).

8:
See McGill v. State
, 200 S.W.3d 325, 333 (Tex. App.—Dallas 2006, no pet.); 
Nunez v. State
, Nos. 14-03-00910-CR, 14-03-00911-CR, 14-03-00912-CR, 2004 WL 1834293, at *3 (Tex. App.—Houston [14th Dist.] Aug. 17, 2004, pet. ref’d) (not designated for publication) (mem. op.);
 but see Thomas v. State
, No. 07-99-00035-CR, 2003 WL 124824, at *3 (Tex. App.—Amarillo Jan. 15, 2003, no pet.) (considering appellant’s punishment phase admission of his intent to use the gun to obtain control of the property in reviewing the factual sufficiency of the evidence of guilt).

9:
The complainant used the term 
rifle
.  We use the term 
shotgun
 for consistency and accuracy.

10:
See Jackson v. Virginia
, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); 
Hampton v. State
, 165 S.W.3d 691, 693 (Tex. Crim. App. 2005) (both providing legal sufficiency standard of review); 
Watson v. State
, 204 S.W.3d 404, 414-15, 417 (Tex. Crim. App. 2006); 
Drichas v. State
, 175 S.W.3d 795, 799 (Tex. Crim. App. 2005); 
Sims v. State
, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003); 
Johnson v. State
, 23 S.W.3d 1, 8-9, 11-12 (Tex. Crim. App. 2000); 
Cain v. State
, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997) (all providing factual sufficiency standard of review).