COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                 FORT
WORTH

 

 

                                        NO. 2-06-374-CR

 

 

CHRISTOPHER
BRITTON NEWSOME                                       APPELLANT

 

                                                   V.

 

THE STATE
OF TEXAS                                                                STATE

 

                                              ------------

 

              FROM THE 355TH DISTRICT COURT OF HOOD COUNTY

 

                                              ------------

 

                                             OPINION

 

                                              ------------








A jury found Appellant Christopher Britton
Newsome guilty of aggravated assault with a deadly weapon and assessed his
punishment at sixty years= confinement.  The trial court sentenced him
accordingly.  Appellant brings three
points on appeal.  In his first point,
Appellant contends that the trial court abused its discretion by failing to
find good cause for Appellant=s
untimely filing of his notice of intent to raise the insanity defense and by
prohibiting Appellant from raising the insanity defense.  In his second and third points, Appellant
challenges the legal and factual sufficiency of the evidence.  Because we hold that the trial court did not
err and that the evidence is legally and factually sufficient, we affirm the
trial court=s judgment.

Regarding Appellant=s notice
of intent to raise the insanity defense, Article 46C.052 of the Texas Code of
Criminal Procedure provides that A[u]nless
notice is timely filed under Article 46C.051, evidence on the insanity defense
is not admissible unless the court finds that good cause exists for failure to
give notice.@[1]  Article 46C.051 provides that the notice must
Abe filed
at least 20 days before the date the case is set for trial, except [that] [i]f
before the 20‑day period the court sets a pretrial hearing, the defendant
shall give notice at the hearing.@[2]








This case was originally set for trial in August
2006 but apparently was reset for October 10, 2006, when voir dire began.  Appellant filed a notice of intent to raise
the insanity defense on October 11 after the jury had already been sworn on
October 10.  The notice stated that A[g]ood
cause exists . . . [because] this notice is filed at the very same time
Defendant=s counsel became aware of the
issue of [Appellant=s] competency to stand trial.@  Affidavits of family members and trial
counsel were attached in support of the notice, but none addressed good
cause.  Trial counsel=s
affidavit provided,

On October 10, 2006, defendant=s counsel was interviewing witnesses in
preparation for trial on October 12, 2006. 
During this interview, one family member related that the Defendant has
for some years heard voices and seen people who are not apparent to
others.  . . . Upon further
investigation, everyone who knows the Defendant confirms that he suffers these
delusions almost daily . . . .  While I have not observed any of these
episodes[,] I have noticed erratic behavior evidenced by inexplicable outbursts
which causes me to be concerned that Defendant may not have sufficient present
ability to consult with me with a reasonable degree of rational
understanding[,] or that he may not have a . . . rational, as well as, a
factual understanding of the proceedings against him . . . .

 








On October 12, the trial court stated on the
record that a discussion had occurred in chambers on October 11 regarding the
notice.  That in-chambers discussion does
not appear in the record.  On the record,
Appellant argued to the trial court, Athe good
cause is that even after having interviewed these people many times and having
interviewed this man many times, I had never been told or [no]body had ever
revealed to me the issues contained in the affidavit . . . until . . . Tuesday
afternoon [October 10, 2006] at about 4:30 p.m.@  The trial court noted that Appellant=s trial
counsel had been appointed on February 22, 2006 and found that the notice was
untimely and that Athere ha[d] not been good cause
shown that would justify the failure to timely file a notice of intent to raise
[the] insanity defense.@ 
Appellant made an offer of proof while the jury was deliberating guilt,
calling Appellant=s parents to testify in support
of the insanity defense.  That testimony,
though, like the affidavits, does not address good cause for the delay in
filing the notice.  We hold that the
trial court did not abuse its discretion by finding that Appellant had not
shown  good cause for the untimely notice
or by prohibiting Appellant from raising the insanity defense.  We overrule Appellant=s first
point.

In his second and third points, Appellant
contends that the evidence is legally and factually insufficient to support his
conviction.  In its primary response, the
State relies on the DeGarmo[3]
doctrine to argue that Appellant waived error by admitting in punishment
phase testimony that he had hit his wife, the complainant, with his
shotgun.  The Texas Court of Criminal
Appeals eviscerated this doctrine in Leday v. State,[4]
but sufficiency of the evidence was not at issue in Leday.[5]  As the Corpus Christi court has explained,








In Leday, the court of criminal appeals abandoned the DeGarmo
doctrine as applied to certain constitutional, legal, and social guaranteesCwhat the court described
as Adue process and those
individual rights that are fundamental to our quality of life.@  One of these Aguarantees@ is that the judgment in
a criminal trial must be supported by proof beyond a reasonable doubt.  Thus, under a literal reading of Leday,
a legal-sufficiency challenge is not waived by a defendant=s admission of guilt at
the punishment phase.

 

Unfortunately, the holding in Leday is not as broad as it
appears.  Leday did not involve a
challenge to the sufficiency of the evidence; the issue was whether the trial
court erred by admitting evidence over the defendant=s objection.  Thus, the holding in Leday is limited
to the court=s resolution of the issue
presented:  a defendant=s admission of guilt does
not waive a court=s erroneous admission of
evidence.

 

In reaching this holding, the Leday court addressed and refuted
the numerous justifications offered for the DeGarmo doctrine, including,
among other things, waiver, estoppel, harmless error, characterization of the
doctrine as a Acommon-sense rule of
procedure,@ and any Aanalogy to the guilty
plea.@  Although the court=s analysis was strongly
worded, the Leday decision did not overrule the DeGarmo doctrine
completely.  Leday involved only
one issue:  the admissibility of
evidence.  To the extent Leday overruled
the DeGarmo doctrine, it did so only on that issue.

 

We are thus back where we started: 
does the DeGarmo doctrine preclude appellant from challenging the
legal sufficiency of the evidence?  We
find the answer in the holding of the DeGarmo opinion itself.  In DeGarmo, the defendant admitted
guilt at the punishment phase of trial.  He then challenged the legal sufficiency of
the evidence on appeal.  After submission
of the case, the court of criminal appeals Acarefully reviewed the evidence@ and found it Amore than sufficient to
sustain the verdict of the jury . . . .@  According
to the court, the evidence Awould permit a rational trier of fact to find
guilt beyond a reasonable doubt.@

 








At this point, the holding of the DeGarmo case ends and Athe DeGarmo
doctrine@ begins.  Despite its conclusion that the evidence was
sufficient, the court stated that a defendant such as DeGarmo, who
admits guilt at the punishment stage of trial, Anot only waives a
challenge to the sufficiency of the evidence . . . but . . . also waives any
error that might have occurred during the guilt stage of the trial.@  This Abreathtaking@ statementCnow called the DeGarmo doctrineCis not the actual holding
of the DeGarmo case: the DeGarmo doctrine was not applied in the DeGarmo
case.  As the Leday court
later explained, Athe DeGarmo
doctrine portion of the DeGarmo opinion is dictum, since the Court
proceeded to consider and overrule the sufficiency of the evidence point that
DeGarmo raised.@

. . . .  For the reasons
articulated in Leday, . . . we decline to follow the DeGarmo
doctrine.  We hold that a defendant's
admission of guilt during the punishment phase of trial does not waive errors
related to the legal sufficiency of the evidence.[6]

 








We adopt the above analysis and join our sister
court in Corpus Christi in holding that the DeGarmo doctrine does not
bar claims of legal insufficiency of the evidence.[7]  Based on the same reasoning, we also hold
that the doctrine does not bar factual sufficiency challenges.[8]  We therefore address the merits of Appellant=s
sufficiency points.

The live paragraph of the indictment provides
that Appellant

did then and there
intentionally or knowingly cause bodily injury to [the complainant] by striking
[her] with a firearm, and the defendant did use or exhibit a deadly weapon
during the commission of the assault, to wit: 
a firearm, that in the manner of its use or intended use was capable of
causing death or serious bodily injury.

 








Appellant contends that the State failed to prove that the shotgun he
hit the complainant with was a deadly weapon because of its manner of use or
intended use.  Specifically, Appellant
contends that there is no evidence that he loaded the shotgun, pointed it at
anyone, or used it in a manner capable of causing serious bodily injury or
death and no evidence that he used the shotgun as a club or that he intended to
shoot or beat the complainant with it. 
Appellant contends that he just used the gun Ato shove
or push@ the
complainant; that is, Ato move [her] from one position
to another across the porch.@








The complainant testified that Appellant picked
up the shotgun[9]
behind the bedroom door and told her that he was going to kill her.  He forced her and their three daughters to go
for a ride.  Their eldest daughter
testified that when Appellant appeared at the girls= bedroom
door before they all left the house, he had A[her]
mama and a shotgun.@ 
The complainant thought that none of them would be returning to the
house, that he would kill her and hurt them all.  The complainant testified that Appellant
pushed her outside after punching her with his fist and then hit her in the
left shoulder with the butt of the shotgun. 
The impact was strong enough to push her across the porch.  The couple=s eldest
daughter testified that she saw Appellant hit her mother in the shoulder with
the shotgun, that it sounded like he had hit wood, and that her mother=s crying
intensified.  Charles Samuel Hall and
Michael Holly, two law enforcement officers who arrived at the scene of arrest,
Appellant=s brother=s
driveway, both testified that the shotgun could cause serious bodily injury if
a person were to swing or jab it at somebody. 
Hall also testified that Appellant told him that he had a twenty-gauge
shotgun in the car, that he then found the very frightened complainant in the
front passenger seat and the shotgun in the front passenger floorboard, and
that the shotgun was made of wood and steel, weighed approximately six to eight
pounds, and was not loaded.

The doctor who treated the complainant for her
injuries testified that the shotgun was capable of causing death or serious bodily
injury by hitting and that the bruises on the complainant=s back
were consistent with her being hit by the butt end of a shotgun.

Appellant=s
arguments that there is no evidence that the shotgun was loaded or pointed at
anyone or that he intended to shoot the complainant are irrelevant to whether
the shotgun is a deadly weapon as charged in this case.  Further, the evidence belies his assertion
that there is no or insufficient evidence that he used the shotgun as a club or
that he intended to beat the complainant with it.  Consequently, based on the appropriate
standards of review,[10]
we hold that the evidence is legally and factually sufficient to support
Appellant=s conviction.  We overrule his second and third points.








Having overruled all of Appellant=s
points, we affirm the trial court=s
judgment.

 

LEE
ANN DAUPHINOT

JUSTICE

PANEL F:    CAYCE, C.J.; DAUPHINOT and MCCOY, JJ.

PUBLISH

DELIVERED:  August 31, 2007











[1]Tex. Code Crim. Proc. Ann. art. 46C.052 (Vernon 2006).





[2]Id. art.
46C.051(b)(2), (c).





[3]DeGarmo v. State, 691 S.W.2d 657, 661 (Tex. Crim. App. 1985), cert. denied, 474
U.S. 973 (1985).





[4]983 S.W.2d 713, 720-26 (Tex. Crim. App. 1998).





[5]Id. at 715.





[6]Resendez v. State, 160 S.W.3d 181, 184-86 (Tex. App.CCorpus Christi 2005, no pet.) (citations omitted).





[7]See Lehrman v. State, No. 02-00-00119-CR, slip op. at 7 (Tex. App.CFort
Worth July 6, 2001) (not designated for publication) (addressing legal sufficiency
complaint even though Lehrman admitted point during punishment phase), aff=d, No. PD-1756-01 (Tex. Crim. App. Oct. 23, 2002) (not
designated for publication).





[8]See McGill v. State, 200 S.W.3d 325, 333 (Tex. App.CDallas 2006, no pet.); Nunez v. State, Nos.
14-03-00910-CR, 14-03-00911-CR, 14-03-00912-CR, 2004 WL 1834293, at *3 (Tex.
App.CHouston [14th Dist.] Aug. 17, 2004, pet. ref=d) (not
designated for publication) (mem. op.); but see Thomas v. State, No.
07-99-00035-CR, 2003 WL 124824, at *3 (Tex. App.CAmarillo Jan. 15, 2003, no pet.) (considering
appellant=s punishment phase admission of his intent to use the
gun to obtain control of the property in reviewing the factual sufficiency of
the evidence of guilt).





[9]The complainant used the term rifle.  We use the term shotgun for
consistency and accuracy.





[10]See Jackson v. Virginia, 443 U.S. 307, 319, 99
S. Ct. 2781, 2789 (1979); Hampton v. State, 165 S.W.3d 691, 693 (Tex.
Crim. App. 2005) (both providing legal sufficiency standard of review); Watson
v. State, 204 S.W.3d 404, 414-15, 417 (Tex. Crim. App. 2006); Drichas v.
State, 175 S.W.3d 795, 799 (Tex. Crim. App. 2005); Sims v. State, 99 S.W.3d 600, 603 (Tex. Crim.
App. 2003); Johnson v. State, 23 S.W.3d 1, 8-9, 11-12 (Tex. Crim. App.
2000); Cain v. State, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997) (all
providing factual sufficiency standard of review).