NUMBERS 13-05-711-CR


COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG 


 


ALEXANDER LIONEL BROWN, Appellant,


v.


THE STATE OF TEXAS, Appellee.

 
 

On appeal from the 232nd District Court of Harris County, Texas

 


MEMORANDUM OPINION


Before Chief Justice Valdez and Justices Rodriguez and Garza


Memorandum Opinion by Justice Garza
 

 

 Appellant, Alexander Lionel Brown, was convicted by a jury of theft by a public
servant and assessed punishment of three years' imprisonment, with a recommendation
of probation. Tex. Pen. Code Ann. § 31.03(f)(1) (Vernon Supp. 2006). By three issues,
appellant contends that (1) the alleged bias of the trial court denied him the right to a fair
trial, (2) the trial court's exclusion of evidence of the university's grievance committee's
findings of inadequate record keeping denied him his constitutional right to present a
defense, and (3) alternatively, the trial court erred in sustaining the State's relevance and
hearsay objections to evidence of an internal audit. For the reasons set forth below, we
affirm the judgment of the trial court.

I. Background 


 In December 2003, appellant was the Academic Coordinator for the Department of
Athletics at the University of Houston. One of his duties included running the department
of athletics' book distribution program. Through this program, the university would loan
textbooks to students on athletic scholarships, with the books being returned at the end of
the semester. Appellant was responsible for overseeing the process of selling used books
back to bookstores.

 Maria Peden was serving as an Assistant Director of Athletics for the University of
Houston during this time. On December 22, 2003, she noticed discrepancies between the
cash paid out by the bookstores for used books and the amounts that had been deposited
for those books with the athletic department's business office. A meeting with appellant
in order to address the discrepancies was scheduled for the next day, but appellant was
unable to attend. Following the university's holiday break, around January 6th or 7th,
2004, the matter was referred to the university's internal auditors. Appellant returned to
work on January 14, at which time he left a voicemail with Peden stating, "whatever was
discovered, we'll make it right." That same day, appellant made a deposit of $6,000 with
the business office. An investigation by a fraud examiner at the District Attorney's Office
revealed appellant's roommate had withdrawn exactly $6,000 from his bank account on
January 13, 2004. Appellant was arrested on January 14th and subsequently charged with
theft by a public servant. 

 At trial, the State presented evidence of multiple discrepancies between the cash
payout receipts from two bookstores and the deposit slips from the department of athletics'
business office. These records showed that between December 5, 2003, and December
19, 2003, the bookstores had paid appellant and his assistant, Keon Banks, $7,510 more
than appellant had deposited with the athletic department. (1)
 Appellant tried to introduce
documentary and testimonial evidence which he claimed would show that the record
keeping procedures used in the book distribution program were inadequate, but the trial
court excluded most of this evidence as irrelevant and hearsay. 

 Appellant was convicted by jury of theft by a public servant. At the punishment
phase of his trial appellant admitted that he stole from the university and showed remorse
for his acts. Appellant did not file a motion for new trial. This appeal ensued.

II. Right to Fair Trial 


 In his first issue, appellant claims that the bias of the trial court against his lead
counsel denied him his constitutional right to a fair trial and amounted to a violation of
Canon 3 of the Texas Code of Judicial Conduct. Tex. Code Jud. Conduct, Canon 3,
reprinted in Tex. Gov't Code Ann., tit. 2, subtit. G app. B (Vernon 2005). Appellant did not
object to this alleged error at trial. (2)
 Generally, to preserve error for appellate review, an
objection must be made in the trial court. Tex. R. App. P. 33.1; Garza v. State, 126 S.W.3d
79, 81-82 (Tex. Crim. App. 2004). Even though appellant did not object in the trial court,
we need not decide whether an objection was required to preserve error because the
record does not reflect the partiality of the trial court or that a predetermined sentence was
imposed. See Brumit v. State, 206 S.W.3d 639, 644-45 (Tex. Crim. App. 2006); Blue v.
State, 41 S.W.3d 129, 131 (Tex. Crim. App. 2000) (citing Marin v. State, 851 S.W.2d 275,
278 (Tex. Crim. App. 1993)); Earley v. State, 855 S.W.2d 260, 262 (Tex. App.-Corpus
Christi 1993, pet. dism'd). (3)
 

 Due process requires that the hearing body or officer be neutral and detached. 
Brumit, 206 S.W.3d at 645. Where no clear bias can be shown, the actions of the trial
court will be presumed to have been correct. Id. Echoing this due process standard,
Canon 3(B)(5) of the Texas Code of Judicial Conduct states that a judge should perform
judicial duties without bias or prejudice. Id. at Canon 3(B)(5). Furthermore, Canon 3(B)(4)
states that "a judge shall be patient, dignified and courteous to litigants, jurors, witnesses,
lawyers and others with whom the judge deals in an official capacity." Id. at Canon 3(B)(4). 
 Specifically, appellant complains of the trial court's comments toward his lead
counsel on several occasions, both in and outside of the presence of the jury. For
example, in the presence of the jury, the trial court denied appellant's lead counsel an
opportunity to respond to a relevancy objection made by the State on two separate
occasions, and denied counsel's request to approach the bench regarding the first of those
objections. With the jury in recess, the trial court told appellant's lead counsel, in response
to counsel's alleged "theatrics," that the court was "just so sick of that I could almost throw
up." The trial court also refused to have counsel's question read back during a bench
conference which had been called to determine whether counsel had opened the door to
evidence of cash shortages that were discovered prior to the time frame covered by the
indictment. In response to this request, the trial court stated: "This is a waste of time." 
The final incident, again with the jury in recess, took place when appellant's lead counsel
reported that appellant had been vomiting and had passed out in the restroom, and that
an ambulance had been called for him. Counsel became frustrated with the court's
attempt to continue the trial in appellant's absence. Counsel said, "it's bothersome to me
that the court seems not to be concerned that my client has a major illness," to which the
court responded, "Right. I'm not concerned about your client's illness. That is not my
concern. My concern is the jury and this case. And evidently that is of not much concern
to anybody on your side of the table to the extent that you can delay things." 

 The comments complained of by appellant do not reflect bias, partiality, or that the
trial judge did not consider the full range of punishment. See Brumit, 206 S.W.3d at 644-45. The trial court may have been annoyed, spoken rudely to lead counsel, and even
shown callous disregard for appellant's health, all outside the presence of the jury. Yet,
none of the comments made in the presence of the jury were made with regard to the guilt
or innocence of appellant. The comments that were made in front of the jury, although
perhaps rudely made, were in reference to points of procedure. See Jasper v. State, 61
S.W.3d 413, 421 (Tex. Crim. App. 2001) (stating "a trial judge has broad discretion in
maintaining control and expediting the trial."). Furthermore, a trial court's irritation with a
defense attorney does not indicate the court's views on the defendant's guilt or innocence. 
Id. The comments of the trial court here do not reflect bias, partiality, or that the trial judge
did not consider the full range of punishment. As far as appellant's contention that the trial
court's comments amounted to a violation of the code of judicial conduct, assuming without
deciding that they were, the Texas Court of Criminal Appeals has held that mere violations
of the code by a trial judge do not by themselves constitute reversible error. Kemp v.
State, 846 S.W.2d 289, 305 (Tex. Crim. App. 1992). Because none of the trial court's
comments rose to such a level as to bear on the presumption of innocence or vitiate the
impartiality of the jury, we overrule appellant's first issue. 

 III. Exclusion of Evidence 

 By his second issue, appellant argues he was denied his constitutional right to
present a defense because he was not allowed to introduce evidence of the grievance
committee's findings and the university's audit regarding the department of athletic's book
distribution program. (4)
 Appellant argues that exclusion of this evidence as irrelevant and
hearsay was constitutional error because it prevented him from effectively presenting his
defense. See Potier v. State, 68 S.W.3d 657, 665 (Tex. Crim. App. 2002). Appellant
further argues, alternatively, in his third issue, that even if we were to find that the exclusion
of the evidence was not constitutional error, the trial court erred in sustaining the State's
objections to the evidence because the evidence was relevant and qualified under the
public record hearsay exception. The State responds that because appellant admitted guilt
during the punishment phase of the trial, the DeGarmo doctrine, as modified by Leday v.
State, 983 S.W.2d 713, 722 (Tex. Crim. App. 1998), prevents him from challenging the
verdict on these grounds. See Leday, 983 S.W.2d at 722; DeGarmo v. State, 691 S.W.2d
657 (Tex. Crim. App. 1985). (5)
 We agree. (6)
 

 The DeGarmo doctrine provides that a defendant who has been found guilty of a
crime and who admits his guilt during the trial's punishment phase is barred from
contesting on appeal an error that occurred during the guilt-innocence phase of the trial. 
DeGarmo, 691 S.W.2d at 661; Resendez, 160 S.W.3d at 184 (citing Reyes v. State, 971
S.W.2d 737, 737 (Tex. App.-Houston [14th Dist.] 1998)). The rationale for the DeGarmo
doctrine flows from the immediate functional goal of a trial-determining the truth. See
Leday, 983 S.W.2d at 724. According to the doctrine, once a defendant admits his guilt
to the charged offense, a trial's truth-seeking function is effectively concluded; hence there
is no purpose in reviewing any errors that may have occurred because they no longer have
any bearing on the determination of truth. See id. 

 In 1998, the court of criminal appeals restricted the applicability of the DeGarmo
doctrine. Id. at 724-26. In doing so, the court based its curtailment on an understanding
that "ascertainment of truth is not the only objective of our law of criminal procedure." Id.
at 724-25. The court stated, "We as a people have deliberately chosen to adopt laws
which interfere with the truth-seeking function of the criminal trial. 'Due process and those
individual rights that are fundamental to our quality of life co-exist with, and at times
override, the truth-finding function.'" Id. (quoting Morrison v. State, 845 S.W.2d 882, 884
(Tex. Crim. App. 1992)). The court outlined a non-exclusive list of guaranties that were
"made to preserve a value that was seen to be more important than the discovery of the
truth in a trial." Leday, 983 S.W.2d at 725. Included in those guaranties are the freedoms
from unreasonable searches and seizures and from self-incrimination, the right to due
process, and the prohibition against commenting on a defendant's failure to testify. See
id. The list of guaranties set out in Leday is neither exclusive nor final. Thus, post-Leday,
when issues are raised on appeal by an appellant who admitted his guilt during the
punishment phase of his trial, a reviewing court must "determine if appellant asserts
fundamental rights or guaranties [which he cannot be estopped from asserting], or whether
the truth-finding function prevails to estop appellant from raising them." See id.; Houston
v. State, 208 S.W.3d 585, 590 (Tex. App.-Austin 2006, no pet.) (citing Gutierrez v. State,
8 S.W.3d 739, 745 (Tex. App.-Austin 1999, no pet.)); Kelley v. State, 22 S.W.3d 628, 631
(Tex. App.-Fort Worth 2000, pet. ref'd) (holding that alleged jury charge error did not
implicate a fundamental right and DeGarmo doctrine prevented review). Here, appellant
unequivocally admitted his guilt during the punishment phase of trial. Thus, he is estopped
from raising his complaint on appeal unless we determine that exclusion of the
complained-of evidence implicates a fundamental right. We conclude that appellant has
not shown that the trial court's exclusion of this evidence at guilt/innocence infringed upon
a fundamental right. (7)
 

 Recently, the Texas Court of Criminal Appeals has ruled that "the exclusion of a
defendant's evidence will be constitutional error only if the evidence forms such a vital
portion of the case that exclusion effectively precludes defendant from presenting a
defense." Potier, 68 S.W.3d at 665. During his murder trial, Potier claimed that he shot
the victim in self defense, but was not allowed to testify at trial about rumors he had heard
from two people in his neighbor that the victim was looking for him, and either wanted to
kill or hurt him. Id. at 665-66. Despite these exclusions, Potier was able to present a good
deal of evidence to support his claim of self defense, including testimony about a prior
incident in which the victim had allegedly robbed him and attempted to shoot him. Id. at
665. Potier also testified that right before he shot the victim, the victim said he was going
to kill him and reached into his pants where Potier thought there was a gun. Id. Based on
this evidence, the court of criminal appeals held that the exclusion of the complained-of
evidence did not amount to constitutional error, because Potier was nonetheless able to
present the substance of his defense to the jury. Id. at 666. 

 In Ray v. State, one of Ray's acquaintances was not allowed to testify about the
circumstances immediately preceding Ray's arrest for possession of crack cocaine. See
Ray, 178 S.W.3d 833, 836 (Tex. Crim. App. 2005). The State alleged at trial that Ray had
care, custody, and control of the drugs. See id. at 835. Ray contended that the excluded
testimony would have shown that just before she and the driver were stopped by police,
the driver took one rock of crack cocaine from a container similar to the one found in the
car and gave it to the acquaintance. See id. However, Ray was still able to testify that the
drugs belonged to the driver of the car, not to her. Id. at 836. Because she was not
completely prevented from presenting her defense on this point, the court ruled that,
though the testimony that was excluded was in fact relevant, the error committed by the
trial court was not of a constitutional dimension. Id.

 The instant case is similar to the two cases discussed above. In presenting his
defense, appellant was able to introduce some evidence of the inadequacies of the
university's record keeping and of the grievance committee's findings. Peden testified that
there were "many problems with the book procedures" and that the record keeping was
"woefully inadequate." The university's athletic director also testified, with regard to the
book distribution program that, "the audit found . . . that the procedures could be improved
upon." (8) Because appellant was still able to present some evidence to support his "poor
accounting" defense that the book distribution program's record keeping was inadequate,
we hold that exclusion of the complained-of evidence did not "significantly undermine
fundamental elements of the accused's defense," and therefore was not constitutional
error. See Potier, 68 S.W.3d at 666 (citing United States v. Scheffer, 523 U.S. 303, 315
(1998)). In view of the foregoing discussion, we hold that application of the DeGarmo
doctrine, as modified by Leday, precludes appellant from raising his complaints on appeal. 
Because appellant is estopped from raising these points on appeal, we overrule his second
and third issues. 

IV. Conclusion

 The judgment of the trial court is AFFIRMED.



 _________________________

 DORI CONTRERAS GARZA,

 Justice

 

Do not publish. 

Tex. R. App. P. 47.2(b).

Memorandum Opinion delivered and 

filed this the 12th day of July, 2007.
1. Both appellant and Banks were fired. Banks was later reinstated as an employee of the university. 

2. Appellant relies on holdings from the Texas Court of Criminal Appeals in arguing that the comments by the
trial judge here constitute fundamental error, relieving appellant of the requirement to object below. See Blue
v. State, 41 S.W.3d 129, 131 (Tex. Crim. App. 2000); Marin v. State, 851 S.W.2d 275, 278 (Tex. Crim. App.
1993). However, when deciding whether this Court may address unassigned error, the applicable test is set
forth in Marin. See Marin, 851 S.W.2d at 278; see also Tex. R. App. P. 33.1. 

3. However, if the alleged bias of the trial court had risen to the level of fundamental error, appellant would not
have waived his right to appellate review by his silence. See Blue, 41 S.W.3d at 131 (citing Marin, 851 S.W.2d
at 278. Prejudicial comments or actions by a trial court constitute fundamental error when they (1) taint the
presumption of innocence in front of the jury, or (2) indicate that the trial court has imposed a predetermined
sentence. Blue, 41 S.W.3d at 132; Earley v. State, 855 S.W.2d 260, 262 (Tex. App.-Corpus Christi 1993,
pet. dism'd). 

4. The audit was requested by the grievance committee that convened to evaluate the case of Keon Banks, who
was also fired (prior to appellant's firing) as a result of the alleged thefts in the book distribution program. The
record reflects that when appellant attempted to offer this evidence the State successfully objected on
relevance and hearsay grounds. Appellant proceeded to conduct a bill of exceptions claiming that the
grievance committee made a number of findings about the shortcomings of the record keeping procedures
used in the book distribution program. 

5. In Resendez v. State, 160 S.W.3d 181,184 (Tex. App.-Corpus Christi 2005, no pet.), this Court addressed
the De Garmo doctrine and its subsequent abrogation by the court of criminal appeals in Leday. In Resendez,
we held that a defendant admitting guilt during the punishment phase does not waive the right to challenge
sufficiency of the evidence on appeal. See id. Our holding and application in the present case is not affected
by and does not affect our holding in Resendez. 

6. A trial court's decision to exclude evidence is reviewed for an abuse of discretion. Green v. State, 934
S.W.2d 92, 101-02 (Tex. Crim. App.1996). If the trial court's evidentiary ruling is within the zone of reasonable
disagreement, no abuse of discretion has occurred and the trial court's ruling must be upheld. Id. The
erroneous exclusion of evidence does not result in reversible error unless it affects a substantial right of the
accused. See Tex. R. App. P. 44.2(b); Alexander v. State, 137 S.W.3d 127, 130 (Tex. App.-Houston [1st
Dist.] 2004, pet. ref'd).

7. In reaching our conclusion, we point out that appellant does not challenge the sufficiency of the evidence. 
Instead, he complains only of the trial court's discretionary determination to not admit evidence regarding the
university's grievance committee findings and evidence of an internal audit. See Resendez, 160 S.W.3d at
184 (holding that defendant admitting guilt during punishment phase does not waive right to challenge
sufficiency of evidence on appeal). 

8. In addition, during closing arguments, appellant made the uncontested argument that whether he gave back
all of the money in question could not be proved "in light of the University of Houston's shotty [sic] accounting
practices."