

**NUMBER 13-09-00334-CR**

**COURT OF APPEALS**

**THIRTEENTH DISTRICT OF TEXAS**

**CORPUS CHRISTI - EDINBURG**

---

**LARRY ADAMS,** **Appellant,**

**v.**

**THE STATE OF TEXAS,** **Appellee.**

---

**On appeal from the 94th District Court
of Nueces County, Texas.**

---

**MEMORANDUM OPINION**

**Before Justices Rodriguez, Benavides, and Vela
Memorandum Opinion by Justice Rodriguez**

A jury found appellant Larry Adams guilty of the felony offense of evading arrest or detention using a vehicle and sentenced him to forty years' imprisonment after evidence of his prior felonies was presented. *See* TEX. PENAL CODE ANN. § 38.04(a), (b)(2)(A) (Vernon Supp. 2009); *see also id*. § 12.42(d)(4) (Vernon Supp. 2009) (setting out penalties for repeat and habitual felony offenders). The trial court heard and denied appellant's

motion for new trial, which asserted ineffective assistance of counsel. By twelve issues, appellant contends the following: (1) the evidence was factually insufficient to support his conviction; (2-3) counsel was ineffective; (4) the trial court made improper comments on the weight of the evidence; (5) appellant's sentence was disproportionate to the offense; (6) the trial court erred in failing to submit a lesser-included offense to the jury; (7) the trial court improperly instructed the jury on the range of punishment; (8) appellant was denied the opportunity to testify during the guilt/innocence phase of trial; (9) the jury panel should not have been informed of a prior conviction for evading arrest; (10) the trial court made improper comments to the jury panel regarding the range of punishment and his prior felony convictions; (11) the trial court erred in conducting a hearing outside the presence of the jury without appellant present; and (12) the prosecutor made an improper jury argument. We modify the judgment and affirm as modified.

## I. SUFFICIENCY OF THE EVIDENCE[1]

By his first issue, appellant contends that the evidence is factually insufficient to support his conviction for evading detention with a vehicle. Specifically, appellant complains that the evidence does not establish that (1) he used his vehicle to intentionally flee from the officer, and (2) the officer was attempting lawfully to detain appellant at the time he fled.

### A. FACTS

At the guilt/innocence phase of trial, Police Officer Stephen Cox testified that on January 7, 2009, he was on patrol, driving a fully-marked patrol car and wearing his

---

[1]Because this is a memorandum opinion and the parties are familiar with the facts, we will not recite them here except as necessary to advise the parties of the Court's decision and the basic reasons for it. *See* TEX. R. APP. P. 47.4.

2

uniform. At 5:24 a.m. that morning, he was dispatched to the Golla neighborhood, a high-crime area in the refinery district. It was still dark when he responded to a report of "a suspicious vehicle in the alleyway behind the 1200 block of Golla"; "a dark-colored small pickup truck in the alleyway, which did not belong there." Officer Cox later explained that there were two calls about this particular incident. One of the calls reported two people rummaging through back yards in the area.

Officer Cox testified that the alleyway was an unpaved utility easement separating residences from commercial property, an easement not meant to be driven upon by the residents. Officer Cox further explained that the easements were well-known for providing burglars and thieves easy access into backyards and that he was "not accustom[ed] to seeing vehicles going in and out of those easements for any legitimate purposes, especially not that time of day."

Officer Cox approached an open field which provided the only access point to the easement, and he observed appellant's small, red pickup truck backing out of the utility easement and into the open field. Officer Cox drove over the curb and into the field, turning on his overhead lights, his take-down lights, and his spotlight to determine what appellant was doing in the area. Officer Cox agreed that it was clear he was trying to detain appellant.

After Officer Cox turned on his lights and was about thirty yards from appellant, he saw appellant turn his head to the side and look directly at him. Appellant immediately put the truck into drive and accelerated into the easement, driving past three lots until he was stopped by an area of thick brush—too thick to pass. Appellant then got out of the vehicle

3

and fled on foot. Officer Cox shouted, "Police," and yelled for appellant to stop. A short time later, backup officers caught appellant and returned him to Golla Street.

Officer Cox testified that he did not see appellant commit any crimes and did not have a warrant for his arrest. Appellant was not under arrest or detention when Officer Cox attempted to approach him. There was no proof that appellant was trespassing on personal property or committing any crime by his presence in the alleyway. Officer Cox also agreed with the State that he was attempting lawfully to detain appellant.

On cross-examination, Officer Cox responded that a bike was found in the easement—"a couple of houses further down" from where the truck stopped. At that time, Officer Cox could not determine whether the bike was stolen. No one claimed ownership of the bike, and Officer Cox agreed that no one reported a home being broken into or that any thefts occurred at that particular time. There was nothing else that "jumped out" at Officer Cox that he suspected to be stolen. Officer Cox stated that he was attempting to detain appellant—to question him—when he approached appellant; that he "had more than enough reasonable suspicion to stop and detain [appellant] and ascertain what he was doing in the area."

Martin D. Sanchez, who resided on Golla Street, testified that around 4:00 a.m. on the morning in question, he saw a vehicle parked under a tree in the alleyway behind his neighbor's house. He called 911 to report the presence of a "suspicious vehicle." Later, Sanchez saw appellant walk up to the truck. Sanchez further testified that when appellant got into his truck, a police car approached "real quick" from around the corner. The patrol car's lights were on. Appellant went "forward in that direction through the alleyway, . . . but he finally stopped." When appellant stopped the vehicle, he opened the door and fled, and

4

the officer yelled for him to stop and "hold it." Appellant jumped over Sanchez's fence. He ran between the garages and out on to the street in front of the residences.

Sanchez explained that he did not see appellant reverse the truck or back out of the alleyway; however, when the officer came up from behind with his "cherry lights" on, he saw appellant move his vehicle forward or to the right side of the alleyway for approximately twenty-five feet. Sanchez agreed that Officer Cox turned on his lights before appellant began to move forward.

## B. STANDARD OF REVIEW AND APPLICABLE LAW

The court of criminal appeals has set forth the standard for factual sufficiency review as follows:

> In a factual sufficiency review, the evidence is reviewed in a neutral light rather than in the light most favorable to the verdict. Evidence can be factually insufficient in one of two ways: (1) when the evidence supporting the verdict is so weak that the verdict seems clearly wrong and manifestly unjust, and (2) when the supporting evidence is outweighed by the great weight and preponderance of the contrary evidence so as to render the verdict clearly wrong and manifestly unjust. Although an appellate court's factual sufficiency review of the evidence allows the court to second-guess the jury to a limited degree, the review should still be deferential to the jury's verdict.

*Williams v. State*, 301 S.W.3d 675, 684-85 (Tex. Crim. App. 2009) (citations omitted), *cert denied*, 2010 U.S. LEXIS 4837, 78 U.S.L.W. 3729 (U.S. June 14, 2010) (No. 09-9635). Our review of a factual sufficiency challenge should be examined under the principles of review for a hypothetically correct jury charge. *Grotti v. State*, 273 S.W.3d 273, 280-81 (Tex. Crim. App. 2008). "'Such a charge [is] one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried.'" *Villarreal v. State*, 286 S.W.3d 321,

5

327 (Tex. Crim. App. 2009) (quoting *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)).

The offense of evading arrest or detention, a Class A misdemeanor, is committed when the defendant "intentionally flees from a person he knows is a peace officer attempting lawfully to arrest or detain him." TEX. PENAL CODE ANN. § 38.04(a). "'[F]leeing is anything less than prompt compliance with an officer's direction to stop." *Horne v. State*, 228 S.W.3d 442, 446 (Tex. App.–Texarkana 2007, no pet.). The offense of evading arrest or detention is raised to a third-degree felony if "the actor uses a vehicle while the actor is in flight and the actor has been previously convicted [of evading arrest or detention].["2] TEX. PENAL CODE ANN. § 38.04(b)(2)(A). The indictment in the present case tracked the language of the third-degree felony evading-detention-with-a-vehicle statute and the habitual, felony-offender statute. *See id.* §§ 12.42(d)(4), 38.04(a), (b)(2)(A).

## C. ANALYSIS

### 1. Using Vehicle to Intentionally Flee

Appellant first contends that the evidence is factually insufficient to establish that appellant knew of the officer's intentions to detain him while he was still in his truck. Appellant claims that he only jumped out of his vehicle and fled after he saw the officer approaching him in the alley.

Officer Cox, however, testified that, when he turned on his red and blue overhead lights and his spotlight, he was only thirty yards from appellant and that appellant turned and looked directly at him. It was then that appellant put his truck in gear and accelerated

---

[2]Appellant pleaded true to the enhancement portion of the indictment setting out that appellant had a prior conviction for evading detention, thus, raising the alleged offense in this case to a felony. *See* TEX. PENAL CODE ANN. § 38.04(b)(2)(A) (Vernon Supp. 2009).

away from Officer Cox. Sanchez's testimony differed concerning the location of appellant's truck and whether appellant was backing his truck when Officer Cox first observed him. However, both Officer Cox and Sanchez testified that appellant's truck moved forward, away from the patrol car, and did not stop immediately after the lights of Officer Cox's patrol car were activated as Officer Cox pursued appellant's truck. Viewing the evidence in a neutral light, we conclude that the evidence is factually sufficient to establish that appellant knew Officer Cox intended to detain him as he was moving forward in his vehicle, as he fled from Officer Cox. *See Williams*, 301 S.W.3d at 684-85; *Calton*, 176 S.W.3d at 234; *see also* TEX. PENAL CODE ANN. § 38.04(a), (b)(2)(A).

**2. Officer Attempting Lawfully to Detain Appellant**

Appellant also contends that the State failed to sufficiently prove that Officer Cox was attempting lawfully to detain him. *See* TEX. PENAL CODE ANN. § 38.04(a). Through his argument, appellant suggests that the evidence is insufficient to prove Officer Cox had a reasonable suspicion to detain him because no crime was being committed in the officer's presence and nothing was found afterwards for which appellant could have been arrested. However, if an officer has a reasonable suspicion to believe that an individual is involved in criminal activity, the officer may conduct a brief investigative detention. *Balentine v. State*, 71 S.W.3d 763, 768 (Tex. Crim. App. 2002); *see also Terry v. Ohio*, 392 U.S. 1, 21-22, 27 (1968) (providing that reasonable suspicion must be based on more than a non-specific suspicion or mere "hunch" of criminal activity). A temporary detention will be justified when the detaining officer has specific, articulable facts which, taken together with rational inferences from those facts, lead him to conclude that the person detained actually is, has been, or soon will be engaged in criminal activity. *Balentine*, 71 S.W.3d at 768;

7

*Garcia v. State*, 43 S.W.3d 527, 530 (Tex. Crim. App. 2001). Because this is an objective standard, we disregard any subjective intent of the officer making the stop and look solely to whether an objective basis exists. *Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005); *see Tanner v. State*, 228 S.W.3d 852, 855-59 (Tex. App.–Austin 2007, no pet.) (concluding that the police has reasonable suspicion to detain the defendant when he and his companion were seen walking at 3:00 a.m. from a dark area behind a bar that was then closed for business). A reasonable-suspicion determination is made by considering the totality of the circumstances. *Ford*, 158 S.W.3d at 492-93; *Garcia*, 43 S.W.3d, 530.

The evidence in this case establishes that Officer Cox responded to pre-dawn reports of a suspicious vehicle in an unpaved alleyway in a high-crime neighborhood and of two people rummaging through backyards. This neighborhood was Officer Cox's patrol area and the alleyways in question were well-known for providing burglars and thieves with easy access to the backyards. Officer Cox did not generally see vehicles using the alleyways for legitimate purposes, especially at this time of day. Further, Officer Cox saw appellant's vehicle in the alleyway. He drove up and turned on his lights. Appellant looked back at Officer Cox and drove his vehicle further into the alleyway, away from Officer Cox's patrol car. These are specific, articulable facts which, when taken together with rational inferences from those facts, could lead Officer Cox to conclude that appellant actually is, has been, or soon will be engaged in criminal activity. *See Balentine*, 71 S.W.3d at 768; *Garcia*, 43 S.W.3d at 530. Disregarding any subjective intent of Officer Cox and looking solely to whether an objective basis exists and considering the totality of the circumstances, we conclude that, based upon his observations, Officer Cox had reasonable suspicion to detain appellant. *See Ford*, 158 S.W.3d at 492-93 (whether a

8

basis for the stop exists is based on an objective standard).  Viewing the evidence in a neutral light, we conclude that the evidence was factually sufficient to support a finding that the officer had attempted lawfully to detain appellant.  *See Williams*, 301 S.W.3d at 684-85; *Calton*, 176 S.W.3d at 234; *see also* TEX. PENAL CODE ANN. § 38.04(a).

In summary, giving deference to the jury's verdict, we conclude that the evidence supporting the verdict was neither so weak nor so outweighed by the great weight of any contrary evidence as to make the verdict seem clearly wrong and manifestly unjust.  *See Williams*, 301 S.W.3d at 684-85.  We overrule appellant's first issue.

## II.  INEFFECTIVE ASSISTANCE OF COUNSEL

By issues two and three, appellant challenges the effectiveness of his trial counsel's assistance.  Appellant first complains of counsel's failure to object to the admission of certain testimony and of her elicitation of other testimony.  He then complains of counsel's failure to obtain evidence which appellant contends is exculpatory.

### A.  STANDARD OF REVIEW

*Strickland v. Washington* sets forth the standard by which we review claims of ineffective assistance of counsel.  466 U.S. 668, 688 (1984); *see Stafford v. State*, 813 S.W.2d 503, 506 (Tex. Crim. App. 1991) (en banc).  In order to determine whether appellant's trial counsel rendered ineffective assistance at trial, we must first determine whether he has shown that counsel's representation fell below an objective standard of reasonableness and, if so, then determine whether there is a reasonable probability that the result would have been different but for counsel's errors.  *Strickland*, 466 U.S. at 688, 690-94.  In assessing a claim of ineffective assistance of counsel, we indulge a strong presumption that "counsel's conduct fell within a wide range of reasonable representation."

9

*Salinas v. State*, 163 S.W.3d 734, 740 (Tex. Crim. App. 2005). Appellant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. *Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001); *Stafford*, 813 S.W.2d at 508-09.

## B. Testimony Regarding Methadone, a Syringe, and a Bike

By his second issue, appellant contends his counsel was ineffective when, at the guilt/innocence phase of the trial, she failed to object to testimony concerning methadone and a syringe and testimony about a bike. He argues that "[t]he jury should never have heard the evidence regarding the stolen bike or that the appellant was a drug addict."

### 1. The Methadone and Syringe

During the guilt/innocence phase of the trial, Officer Cox testified on direct examination by the State, without objection, that he found a locked box containing documents with appellant's name on it and several doses of methadone in appellant's truck. Officer Cox also testified that appellant was not charged with an offense for the methadone because it had been prescribed for him. While Officer Cox testified on re-direct that a syringe was found in appellant's truck, on re-cross he admitted that he did not know whether the syringe could have been used to administer the methadone.

Further, at the hearing on appellant's motion for new trial, appellant's trial counsel testified that she had "no problem" with evidence of the methadone because it was prescribed for appellant. Counsel also testified that she did not "[make] an issue of the methadone" and that "[appellant] wasn't charged with possession or anything of that sort . . . so [she] didn't think it harmed him very much."

10

The record developed at the hearing on the motion for new trial contains no support for appellant's argument that his trial counsel was ineffective because she failed to object to the admission of evidence that methadone and a syringe had been found in appellant's truck.  While possession of methadone and a syringe may suggest an addiction, it may also support the position that one is confronting his problem, not running from it.  Thus, the record before this Court, including the complained-of testimony at trial and appellant's trial counsel's testimony at the hearing, does nothing to rebut the presumption that trial counsel's actions and decisions regarding the admission of evidence of the methadone and syringe were reasonably professional and were motivated by sound trial strategy.  *See Garcia*, 57 S.W.3d at 440; *Stafford*, 813 S.W.2d at 508-09; *see also Salinas*, 163 S.W.3d at 740*.*

## 2.  The Bike

At trial, appellant's counsel asked Officer Cox if a bike was found at the scene.  He responded that a bike was found further down the easement and that he suspected the bike was stolen.  However, Officer Cox also stated that none of the neighbors claimed the bike and there were no reports of a stolen bike or other evidence to indicate that it was stolen.  Counsel elicited testimony from Officer Cox that there was nothing in appellant's possession at the time that was suspected to be stolen and that Officer Cox had no proof that appellant had committed any other crimes.  In her closing argument, appellant's trial counsel emphasized that, even though Officer Cox assumed that the bike was stolen, there was no evidence that appellant had stolen it.

11

Furthermore, at the hearing on appellant's motion for new trial, when asked whether her trial strategy was "to get a conviction for the lesser[-]included misdemeanor evading?", appellant's trial counsel responded as follows:

> Yes, that was a trial strategy. After discussing the case with the defendant, he never really gave me any kind of trial strategy. His main, main issue was the bike and the receipt for the bike. But as far as him being in the alley, why he was there, what put him there, I never got details from him. All he kept telling me [was] he didn't remember, he didn't remember. I never got names of witnesses, I never got people who he was with. So we went out to the scene, we went and investigated, we spoke to Martin Sanchez, and he's the one that basically gave us our trial strategy which is he saw him running on foot.

This is the only testimony provided by counsel that mentions the bike and her trial strategy.

Based on the trial testimony and the testimony at the hearing, we conclude that the record does not rebut the presumption that trial counsel's actions and decisions involving evidence of the bike found in the alleyway were reasonably professional and were motivated by sound trial strategy. *See Garcia*, 57 S.W.3d at 440; *Stafford*, 813 S.W.2d at 508-09; *see also Salinas*, 163 S.W.3d at 740. Accordingly, we overrule appellant's second issue.

## C. Evidence Regarding the Release of the Bike

By his third issue, appellant complains that his trial counsel was ineffective because she failed to obtain exculpatory evidence—a release form from the Corpus Christi Police Department (CCPD)—that would have established he owned the bike. Appellant claims that this form "proved he had shown receipt of ownership of the bike to have it returned to him." He asserts that his counsel had a duty to investigate and that her performance was deficient. We disagree.

12

When assessing the reasonableness of an attorney's investigation, a reviewing court must consider the quantum of evidence already known to counsel and whether the known evidence would lead a reasonable attorney to investigate further. *Ex parte Martinez*, 195 S.W.3d 713, 721 (Tex. Crim. App. 2006) (citing *Wiggins v. Smith*, 539 U.S. 510, 527 (2003)). As the Supreme Court has stated concerning the duty to investigate:

> Strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.

*Wiggins*, 539 U.S. at 521-23; *see also Martinez*, 195 S.W.3d at 721; *Ex parte Briggs*, 187 S.W.3d 458, 466-67 (Tex. Crim. App. 2005). Moreover, appellant proves his claim of ineffective assistance only if the consequence of the failure to investigate is that the only viable defense available to him is not advanced and there is a reasonable probability that, but for counsel's failure to advance the defense, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694; *Castellano v. State*, 49 S.W.3d 566, 576 (Tex. App.–Corpus Christi 2001, pet. ref'd).

At the hearing on his motion for new trial, appellant testified that he had recovered his bike from the police station by showing a purchase receipt. Appellant testified that he had asked his trial attorney to get "paperwork" from the city jail showing that he had purchased the bike in question. However, the form entered into evidence at the hearing as Defense Exhibit 1 reflected only that a mountain bike had been permanently released to appellant on January 21, 2009. The form did not describe the circumstances under

13

which the release was made or what proof of ownership, if any, appellant was required to provide.

Moreover, appellant was charged with and found guilty of evading detention with a vehicle. Whether the bike was stolen was not directly relevant to the question of whether he was guilty of the offense charged; it was not a part of his defense at trial and was not his only viable defense. *See Strickland*, 466 U.S. at 694; *Castellano*, 49 S.W.3d at 576. Without more, considering the quantum of evidence already known to counsel and whether the known evidence would lead a reasonable attorney to investigate further, *Martinez*, 195 S.W.3d at 721, we conclude that appellant's counsel made a reasonable decision that further investigation, including efforts to obtain the form from the CCPD, was unnecessary. *See Wiggins*, 539 U.S. at 521-23; *see also Martinez*, 195 S.W.3d at 721; *Briggs*, 187 S.W.3d at 466-67. Appellant has not shown that his trial attorney was ineffective for failing to obtain such evidence, and we overrule his third issue.[3]

### III. IMPROPER COMMENTS TO JURY REGARDING DANGERS OF EVADING DETENTION

Appellant urges, by his fourth issue, that the trial court made improper comments to the jury panel which conveyed his opinion of the case. *See* TEX. CODE CRIM. PROC. ANN. art. 38.05 (Vernon 1979) (providing that the judge shall not "at any stage of the proceeding previous to the return of the verdict, make any remark calculated to convey to the jury his opinion of the case"). Appellant complains of the following remarks made by the trial court to the panel during voir dire: "We had a policeman get killed recently because somebody

---

[3]Having concluded that counsel's assistance was not ineffective for failing to object to evidence of the "stolen bike" or for failing to obtain the receipt releasing it, there is no support for appellant's argument that because of the cumulative nature of trial counsel's mistakes his substantial rights were violated and due process denied.

failed to stop.  In our case, I don't think anybody got killed, but it's a very dangerous thing to do, not to stop when a policeman wants to stop you."

No objection was made, and several panel members were then examined on individual voir dire.  Later, appellant's trial attorney moved for a mistrial, as follows:

> Right now, we would move for a mistrial, reason being, because you, when talking to the jury, just right now, mentioned the case involving Officer Alexander, and saying that this is a very serious crime, evading arrest, and we had a police officer killed in that, so it's very serious. . . .  We feel that that is prejudicial and feel that the only way that that can be cured is this entire panel has to be—a mistrial needs to be declared and we need to get a whole entire new panel.

The complaining party must timely raise a complaint that the trial court's comments violate article 38.05 in order to preserve error on appeal.  *See* TEX. R. APP. P. 33.1; *Resendez v. State*, 160 S.W.3d 181, 189-90 (Tex. App.–Corpus Christi 2005, no pet.) (en banc).  In addition, a party who fails to request an instruction to disregard will have forfeited appellate review of that class of events that could have been "cured" by such an instruction.  *Young v. State*, 137 S.W.3d 65, 70 (Tex. Crim. App. 2004) (en banc).  Specifically, an instruction by the trial court to the jury to disregard any comments made by the court is generally sufficient to cure any error arising from its statements.  *Marks v. State*, 617 S.W.2d 250, 252 (Tex. Crim. App. 1981); *Peavey v. State*, 248 S.W.3d 455, 470 (Tex. App.–Austin 2008, pet. ref'd); *Aschbacher v. State*, 61 S.W.3d 532, 539 (Tex. App.–San Antonio 2001, pet. ref'd).

In this case, appellant neither timely objected to the trial court's comments nor requested an instruction to disregard the comments in question before requesting a

mistrial.[4]   Therefore, appellant has waived his claim that the trial court made improper comments to the jury panel.  *See Young*, 137 S.W.3d at 69-70.  Appellant's fourth issue is overruled.

## IV.  DISPROPORTIONATE SENTENCE

Appellant argues, in his fifth issue, that his sentence of forty years, under the circumstances of this case, is disproportionate to the gravity of his offense.  However, when the sentence imposed is within the punishment range and is not illegal, as in this case, the failure to specifically object to an alleged disproportionate sentence in the trial court or in a post-trial motion waives any error on appeal.  *Noland v. State*, 264 S.W.3d 144, 151 (Tex. App.–Houston [1st Dist.] 2007, pet ref'd); *Trevino v. State*, 174 S.W.3d 925, 927-28 (Tex. App.–Corpus Christi 2005, pet. ref'd); *see* TEX. R. APP. P. 33.1(a).

Appellant directs us to no place in the record where he objected to the sentence as being disproportionate or constitutionally improper.  And he did not raise such a claim in his motion for new trial.  Thus, appellant waived error on his present claim that the sentence was disproportionate.  We overrule the fifth issue.

## V.  LESSER-INCLUDED OFFENSE

By his sixth issue, appellant contends the trial court erred in refusing his request for submission of a jury instruction on the offense of fleeing or attempting to elude a police officer under section 545.421 of the Texas Transportation Code.  *See* TEX. TRANSP. CODE

---

[4]At voir dire, the relief sought may be more properly characterized as a motion to quash the venire panel, rather than as a motion for mistrial.  *See Mendoza v. State*, 552 S.W.2d 444, 446-47 (Tex. Crim. App. 1977); *Capps v. State*, 244 S.W.3d 520, 527 (Tex. App.–Fort Worth 2007, pet. ref'd) (memo. op., designated for publication) (generally equating review of the trial court's decision to deny a motion to quash the panel with later review of its denial of a motion for mistrial, with regard to claims that improper comments tainted the potential or actual jurors).  Nonetheless, our review in this case, whether it be a motion to quash or a motion for mistrial, is the same.

16

ANN. § 545.421 (Vernon Supp. 2009). Appellant claims that section 545.421 of the transportation code is a lesser-included offense of the state-jail felony of evading arrest under penal code section 38.04, the offense for which he was convicted. *See* TEX. PENAL CODE ANN. § 38.04. However, the court of criminal appeals has concluded otherwise, affirming the Houston First District Court of Appeals's determination that the transportation code offense of fleeing or attempting to elude a police officer is not a lesser-included offense of the penal code offense of evading detention by use of a motor vehicle. *See Farrakhan v. State*, 247 S.W.3d 720, 720-24 (Tex. Crim. App. 2008) (affirming *Farrakhan v. State*, No. 01-04-01205-CR, 2006 Tex. App. LEXIS 103, at *2-8 (Tex. App.–Houston [1st Dist.] Nov. 30, 2006)); *Peavey,* 248 S.W.3d at 468-69 (listing the differing elements of the two offenses).

Appellant relies on *Klapuch v. State* as support for his lesser-included-offense argument. *See* No. 13-05-025-CR, 2005 Tex. App. LEXIS 9121, at *4-5 (Tex. App.–Corpus Christi 2005, no pet.) (mem. op., not designated for publication). In *Klapuch,* however, we did not address the first prong of the analysis set out in *Threadgill v. State*, 146 S.W.3d 654, 665 (Tex. Crim. App. 2004) (en banc)—whether the offense is actually a lesser-included offense of the offense charged—because the State did not dispute that prong of the analysis. *See Klapuch*, 2005 Tex. App. LEXIS 9121, at *3-4. We assumed, without deciding, that it was a lesser-included offense and concluded, under *Threadgill*'s second prong, that there was no evidence that Klapuch knew that the officer was attempting lawfully to arrest or detain him. *See id*., 2005 Tex. App. LEXIS 9121, at *4-5. Therefore, *Klapuch* provides no precedential value for this Court on the issue now before us.

Therefore, following the holding in *Farrakhan*, we conclude that appellant was not entitled to a charge on the transportation code offense. *Farrakhan*, 247 S.W.3d at 720. Because the transportation code offense is not a lesser-included offense of the charged offense, we conclude that the trial court did not err in refusing to submit appellant's requested instruction. We overrule appellant's sixth issue.

## VII. INSTRUCTION ON RANGE OF PUNISHMENT

Appellant asserts by his seventh issue that the trial court erred when it improperly instructed the jury on the range of punishment under section 12.42(d) of the Texas Penal Code. *See* TEX. PENAL CODE ANN. § 12.42(d). Appellant claims that fundamental error occurred when the trial court instructed the jury on the range of punishment because, as a policy matter, it is inherently unfair to apply habitual felony offender status to any state jail felony case. However, appellant was not convicted of a state jail felony, but of a third-degree felony, by virtue of the combination of his use of a vehicle and his prior conviction. *See id*. § 38.04(b)(2)(A). Accordingly, appellant's policy argument against applying the habitual felony statute to a state jail felony does not apply in this case. We overrule appellant's seventh issue.

## VIII. RIGHT TO TESTIFY

By his eighth issue, appellant complains that he was denied his right to testify during the guilt/innocence phase of trial because he was improperly counseled to believe that because of his prior convictions, he could not testify. *See* TEX. CONST. art. I, § 10 (providing that "in all criminal prosecutions the accused shall have . . . the right of being heard by himself or counsel, or both"); TEX. CODE CRIM. PROC. ANN. art. 38.08 (Vernon 2005) (setting out that "any defendant in a criminal trial shall be permitted to testify in his

18

own behalf"); *see also Smith v. State*, 286 S.W.3d 333, 338 n.9 (Tex. Crim. App. 2009) (citing *Rock v. Arkansas*, 483 U.S. 44, 51-52 (1987)) (explaining that a criminal defendant has a constitutional right to testify based on the due process clause of the Fourteenth Amendment and the Fifth and Sixth Amendments of the United States Constitution; a right that can be knowingly and voluntarily waived only by the defendant, not by his counsel). While it is the defendant who must make the ultimate decision on whether to testify, counsel is permitted to advise him on the advantages and disadvantages. *Sapata v. State*, 574 S.W.2d 770, 771 (Tex. Crim. App. 1978); *Hebert v. State*, 836 S.W.2d 252, 255 (Tex. App.–Houston [1st Dist.] 1992, pet. ref'd) (op. on rehr'g).

The record in the present case reveals that during the guilt/innocence phase of the trial, the State offered two witnesses and then rested. Appellant did not testify, although he now asserts that he wanted to testify at trial to tell the truth about what happened in the alleyway and to explain his prior convictions if he had to do so.

At the hearing on his motion for new trial, appellant provided the following testimony on direct examination that he contends supports his claim:

Q: [Counsel]      Okay. You did not testify at the guilt/innocence phase; is that correct?

A: [Appellant]      No.

Q:      Okay. And what was [trial counsel's] explanation for you not testifying, or what was her explanation regarding the law in regards to your testimony?

A:      That they would bring my past up.

Q:      Okay. Your past meaning you had two priors, that's why you were indicted with the habitual?

A:      Yes.

19

Q:                Okay. So she told you that if you testified during the guilt/innocence before the jury, they could learn about your prior felonies, correct?

A:                Yes.

Q:                Did you understand you still had the right to testify?

A:                Not really.

Q:                Okay. You believed it meant you couldn't testify?

A:                Well, not without them bringing my past up.

. . . .

Q:                So you realized you could testify, they would just bring it up?

A:                Yeah, and that's why she filed a motion from the beginning to suppress my past.

Appellant also relies on the following testimony provided during his cross-examination:

Q: [The State]      Now, it sounds like you knew you could have testified at trial, but you made a decision not to tell people that you were still on parole . . . for . . . two burglaries of a building?

A: [Appellant]      No. The way she was pursing [sic] the case I couldn't testify because I didn't actually know what to say.

. . . .

Q:                Why didn't you just tell the truth?

A:                Then it would have brought my past up. I couldn't testify in my trial.

Q:                Well, that's a decision that you made after talking to your counsel?

A:                The only time that she said that I could testify was after I was found guilty, that I could actually get up there and I didn't. I chose not to.

Q:      Would that be because your history would have already been admitted?  At punishment, your entire criminal history is admitted.

A:      Yeah, but then—

Q:      At guilt/innocence it's not.  You know, if you had testified at guilt/innocence, you understand that you would have at least the minimum of your two '89 burglaries of a vehicle would have been admitted?

A:      My two '89 burglaries of a—

Q:      I'm sorry, burglary of a building, that you received 20-year sentences that you're still on parole for?

A:      Well, yeah, it was irrelevant.  They indicted me as a habitual.  Yeah, they were gonna bring my past up.

Q:      But if you had testified it would have come out during guilt/innocence?

A:      Yes.

Q:      So it sounds like you understood what were the consequences of testifying and not testifying, right?

A:      No.

Appellant also provided the following testimony on direct examination concerning his decision on whether to testify at the guilt/innocence phase of the trial:

Q: [Counsel]      Were you willing to risk the jury hearing about your past so you could present this defense on your behalf?

A: [Appellant]    Well, I don't really know.  I mean, I kind of thought [my trial counsel] knew what she was doing.  She said that she had talked to the guy that was actually there that was the [S]tate's witness and she was—he was supposed to be our witness too.

Q:      Okay.

21

A: So it kind of threw me off, you know. I mean, she made it sound like she really had some good defense or something.

The State contends that this testimony supports its position that the testimony from the hearing clearly shows that appellant followed his trial counsel's advice not to testify at the guilt/innocence phase of the trial because of the consequences and possible impeachment with his priors, not because he thought he had no right to testify. In addition, the State directs us to the following testimony provided by appellant's trial counsel, which it argues supports its position:

Q: [the State] And did you go over his—the defendant's right to testify?

A: [Trial Counsel] Yes. We went over that in detail. I explained to him that he had a right to testify. My concern was that he had convictions that would come in which is why we filed a motion in limine. The motion in limine was granted, but if he was to get up to testify, he still ran the risk of his history coming in, and we went over that in detail.

Q: And to your recollection, did his burglary conviction, his felony convictions come out during the guilt/innocence?

A: No, they did not, and that was because he did not testify.

Q: But at least some of those convictions would have been relevant if he had testified?

A: Yes, it would have harmed his credibility, yes.

Q: And was your trial strategy to get a conviction for the lesser included misdemeanor evading?

A: Yes, that was a trial strategy. . . .

Q: And if he—in your opinion, if he had given testimony similar to what he had given today, or what he gave to you earlier, would he have appeared credible to a jury?

22

A:          No, I do not believe he would have appeared credible and that's what we told him. We strongly recommended that he not testify because of his history, and he followed our advice. He asked for our advice and that's what we recommended.

Q:          But ultimately, it was his decision?

A:          Ultimately, it was his decision not to testify. And once punishment came along, we told him, I mean, at this point you kind of explain, you know, why you have the history that you do, and he said he didn't want to.

Q:          So even after—in punishment, after his history had been admitted through other means, he still didn't want to testify?

A:          Yes, he still did not want to testify. And again, that was his election.

As set out by the Texas Criminal Court of Appeals in *Johnson v. State*, because "defense counsel shoulders the primary responsibility to inform the defendant of his right to testify, including the fact that the ultimate decision belongs to the defendant," a claim by a defendant that he was denied his right to testify is properly addressed under the *Strickland* framework for ineffective-assistance-of-counsel claims. 169 S.W.3d at 235, 239 (Tex. Crim. App. 2005); *see Smith*, 286 S.W.3d at 341-42. Appellant raises no claim here that his trial counsel's advice not to testify was deficient. Nonetheless, even if we assumed appellant's argument was an ineffective-assistance-of-counsel claim, it fails.

The record shows that appellant discussed his right to testify with his trial counsel. His counsel specifically testified that she explained to appellant that he had a right to testify and went over it in detail with him. She testified that ultimately it was appellant's decision not to testify. Counsel also testified that she discussed trial strategy with appellant, including what could happen should he testify at the guilt/innocence phase of trial.

23

Although appellant argues that he was misled by his trial counsel into believing he could not testify during the guilt/innocence phase of the trial, the record does not support this assertion. Appellant testified that his trial counsel's explanation for not testifying was that "they would bring [his] past [prior felonies] up." Appellant believed he could not testify "without them bringing [his] past up" and that was "why [his trial counsel] filed a motion . . . to suppress [his] past." Appellant also stated that he believed he could not testify because he did not know what to say. He explained that if he told the truth, his past, including his two prior burglaries, would be brought up; therefore, he could not testify at trial. Appellant also disagreed that he understood the consequences of testifying or not testifying and that he "thought [trial counsel] knew what she was doing" and "kind of threw [him] off," making it sound like she had a good defense.

Based on our review of the record, we cannot conclude that it supports appellant's contention that appellant's counsel's assistance was ineffective because she led him to believe that, because of the prior convictions, he could not testify, that he had to give up his right to testify. Rather, appellant's decision not to testify was based on his understanding that the jury would become aware of his prior convictions. Counsel explained this to him in detail. Therefore, indulging a strong presumption that "counsel's conduct fell within a wide range of reasonable representation" and that, under the circumstances, the challenged action might be considered sound trial strategy, we conclude that appellant has failed to bring forth any record indicating counsel misled him into thinking that he could not testify or that counsel's performance fell below an objective standard of reasonableness. *Strickland*, 466 U.S. at 688, 690-94; *Salinas*, 163 S.W.3d at 740; *Garcia*, 57 S.W.3d at 440. Appellant's eighth issue is overruled.

24

## IX. PRIOR CONVICTION

Appellant argues, by his ninth issue, that appellant's "prior conviction used to enhance the charge from a state jail felony to a third-degree felony should not have been read to the jury panel during voir dire, thus opening it up for discussion and unnecessary attention." However, appellant failed to object to the statements concerning the allegation of a prior conviction for evading arrest, at the time they were made. *See* TEX. R. APP. P. 33.1; *Jasper v. State*, 61 S.W.3d 413, 421 (Tex. Crim. App. 2001) (refusing to find fundamental error with regard to comments that did not "bear on the presumption of innocence or vitiate the impartiality of the jury"). Moreover, even had error been preserved, the comments were proper. A prior conviction requirement for third-degree evading arrest is an element of the offense that must be proved at the guilt/innocence phase of trial. *Calton*, 176 S.W.3d at 234-36. And "prior convictions [are] the legitimate subject of voir dire, opening statements, and closing arguments." *Hollen v. State*, 117 S.W.3d 798, 802 (Tex. Crim. App. 2003). Accordingly, we conclude that it was not error to mention the prior conviction to the panel at voir dire. Appellant's ninth issue is overruled.

## X. IMPROPER COMMENTS TO JURY REGARDING RANGE OF PUNISHMENT

Appellant complains by his tenth issue that the trial court made improper comments to the jury panel during voir dire concerning the range of punishment and prior felonies, thereby "improperly impl[ying] by [its] comments that the appellant had progressively worked his way up committing other crimes in the past and that is why the punishment range was so high." By this argument, as in issue four above, appellant is complaining that the trial court made improper comments to the jury panel which conveyed his opinion of the case. *See* TEX. CODE CRIM. PROC. ANN. art. 38.05. And again, as set out above, the

25

complaining party must timely object that the trial court's comments violate article 38.05 in order to preserve error on appeal. *See* TEX. R. APP. P. 33.1; *Resendez*, 160 S.W.3d at 189-90. Appellant failed to timely object to the trial court's remarks to the jury panel regarding punishment. Thus, appellant has not preserved error for our review. We overrule the tenth issue.

## XI. HEARING WITHOUT APPELLANT PRESENT

In his eleventh issue, appellant contends that the trial court erred in conducting a hearing without his presence. *See* TEX. CODE. CRIM. PROC. ANN. art. 33.03 (Vernon 2006) (providing criminal defendants with a statutory right to be present during their trials and allowing criminal defendants to be absent, if they choose, after pleading to the indictment in a bench trial or after jury selection in a jury trial); *Routier v. State*, 112 S.W.3d 554, 575 (Tex. Crim. App. 2003). The State responds that appellant's trial counsel's waiver of appellant's presence was not erroneous, and even if there was error, it was harmless. We agree.

Prior to the beginning of the punishment phase of appellant's trial, a hearing was held to discuss the charge and the admissibility of certain evidence. At the end of the hearing, the trial court inquired about appellant's absence. Appellant's counsel responded that he "was fine with doing that . . . hearing without [his] client being [present]."

When a defendant's attorney waives his client's right to be present at trial, the defendant must show that the waiver was erroneous or that he was not aware of the proceedings and that the trial court erred in accepting the waiver. *Routier*, 112 S.W.3d at 576. The record, in this case, shows that counsel waived appellant's presence. Appellant does not specifically allege that the waiver was erroneous. *See id*. The record does not

26

reveal why appellant was not present. *See id.* And although appellant alleges that he was unaware of the proceedings, there is no evidence to support this allegation. *See id.* Finally, he has not shown that the trial court erred in accepting his attorney's waiver of his presence. *See id.*

Moreover, even had there been supporting evidence, we would conclude that appellant's absence was harmless because the absence of the defendant when only questions of law are considered will not cause reversal unless the presence of the defendant bears "a reasonably substantial relationship to the opportunity to defend." *Adanadus v. State*, 866 S.W.2d 210, 219-20 (Tex. Crim. App. 1993) (explaining that a defendant must show that his presence would have furthered the defense in some way and concluding that "[b]ecause appellant's presence did not bear a 'reasonably substantial relationship to the opportunity to defend', no harm or prejudice was shown as a result of his absence"); *Guerra v. Sate*, 760 S.W.2d 681, 696 (Tex. App.–Corpus Christi 1988, pet. ref'd) (quoting *Mares v. State*, 571 S.W.2d 303, 307 (Tex. Crim. App. 1978)). In this case, matters discussed at the hearing concerned the charge and the admissibility of certain evidence. These matters raised only legal issues. We cannot conclude that appellant, himself, would have had anything to contribute in the way of additional facts or strategy decisions. Thus, the presence of appellant at the hearing did not bear "a reasonably substantial relationship to the opportunity to defend." *Adanadus*, 866 S.W.2d at 220. Accordingly, error, if any, in failing to secure appellant's presence at the hearing was harmless. Appellant's eleventh issue is overruled.

## XII. IMPROPER JURY ARGUMENT

Finally, by his twelfth issue, appellant complains of improper jury argument by the prosecution—argument asking the jury to be the voice of the community in assessing

punishment.[5] However, failure to object to jury argument forfeits the right to raise the issue on appeal. *See Threadgill*, 146 S.W.3d at 667, 670; *Simpson v. State*, 119 S.W.3d 262, 268 (Tex. Crim .App. 2003); *Cockrell v. State*, 933 S.W.2d 73, 89 (Tex. Crim. App. 1996) (en banc). Appellant did not object to this argument. Furthermore, while the prosecutor may not ask the jury to convict the defendant because the community demands, desires, or expects it, he may properly ask the jury to be the voice of the community and argue that its decision should reflect the community's desire for strong law enforcement. *See Borjan v. State*, 787 S.W.2d 53, 56 (Tex. Crim. App. 1990) (en banc); *In re A.J.G.*, 131 S.W.3d 687, 692-93 (Tex. App.–Corpus Christi 2004, pet. denied). In this case, the complained-of argument asked the jury to be the voice of the community and in its decision, to reflect the community's desire for strong law enforcement. Accordingly, the argument was not improper. We overrule appellant's twelfth issue.

## XII. MODIFICATION OF JUDGMENT

The Texas Rules of Appellate Procedure give this Court authority to modify judgments sua sponte to correct typographical errors and make the record speak the truth. TEX. R. APP. P. 43.2; *French v. State*, 830 S.W.2d 607, 609 (Tex. Crim. App. 1992) (en banc); *Rhoten v. State*, 299 S.W.3d 349, 356 (Tex. App.–Texarkana 2009, no pet.); *Gray v. State*, 628 S.W.2d 228, 233 (Tex. App.–Corpus Christi 1982, pet. ref'd). In this case,

---

[5]Appellant complains of the following argument:

> As 12 members of the community—you're 12 members of the community, taken from the community at large to say what the community feels about this. Now, as the community, we are asking you to say it's not okay to run from police, it's not okay to not be very good at it, it's not okay to be suspicious in utility easements where there are backyards that can easily be jumped into and out of when there's no other eyes on the street.

> I'm asking you that this defendant is guilty of using a vehicle and evading from Stephen Cox. As a community say, "This is not all right [sic]. We are tired of crime here." Find the defendant guilty.

the trial court's judgment refers to the statute for the offense under which appellant was convicted as section 38.04(b)(2)(B) of the Texas Penal Code. *See* TEX. PENAL CODE ANN. § 38.04(b)(2)(B) (Vernon Supp. 2009). Section 38.04(b)(2)(B) provides that the offense becomes a third-degree felony because of serious bodily injury caused to another who is neither the actor nor the officer from whom the actor is fleeing. *Id*. Our review of the record shows that the correct statute for the offense is section 38.04(b)(2)(A). *See id*. § 38.04(b)(2)(A). Therefore, we hereby modify the judgment to indicate that the statute under which appellant was convicted is section 38.04(b)(2)(A) of the Texas Penal Code.

### XIII. CONCLUSION

We affirm the judgment as modified.

NELDA V. RODRIGUEZ
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
15th day of July, 2010.